### In re E. M. NEWTON & CO.*

### SWOFFORD BROS. DRY GOODS CO. v. BRYANT.

(Circuit Court of Appeals. Eighth Circuit. April 27, 1907.)

No. 2,454

1. BANKRUPTCY—SURRENDER OF PROPERTY—STIPULATION—PERFORMANCE.

Where intervener surrendered possession of property received from the bankrupts which was to be the subject of litigation, on the faith of a stipulation between the intervener and the bankrupt's receiver, approved by the referee, that intervener should lose no rights thereby, the bankrupt's trustee should not be permitted to repudiate the stipulation, though the receiver and referee may have acted improvidently in entering into it.

*Rehearing denied June 17, 1907.

2. CHATTEL MORTGAGES—DISTINGUISHED FROM CONDITIONAL SALE.

Intervener contracted in writing to deliver certain goods to the bankrupts prior to their bankruptcy, to be sold by them in the usual course of their business, but that the title and right of possession of all such goods and all the proceeds of sales thereof, whether in cash or in book accounts, should be vested and remain in intervener until the purchase price of the goods had been fully paid to it; that, except for the right to resell the goods in the ordinary course of business, the bankrupts should not remove any from the city in which they were doing business; and that they should keep the goods insured for intervener's benefit. *Held*, that the bankrupts, not only held such goods for intervener, but were bound to account for and pay over the proceeds of goods sold as collected, and that the contract was therefore a conditional sale, and not a chattel mortgage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, § 23.]

3. BANKRUPTCY—CLAIMS TO PROPERTY—WHAT LAW GOVERNS.

Where intervener in bankruptcy proceedings claimed certain property delivered to it just prior to the institution of the proceedings, whether the contract under which intervener claimed was a conditional sale or a chattel mortgage, whether it was valid as between the parties, and the effect of intervener's failure to record it were questions which were determinable exclusively by the local law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 273, 275, 276, 277.]

4. SALES—CONDITIONAL SALES—RECORD.

Under the law of Arkansas a conditional contract of sale is valid though it provides that the vendee may sell the property in the usual course of business, and it is not recorded.

[Ed. Note,—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1352, 1353, 1384, 1397, 1370.]

5. BANKRUPTCY—TITLE OF TRUSTEE.

The bankrupts' trustees acquire no greater right to property which has been in the bankrupts' possession than the bankrupts themselves had.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 193, 353, 1384, 1397, 1370.]

Appeal from the District Court of the United States for the Western District of Arkansas.

Swofford Bros. Dry Goods Company, a corporation, appeal from an order denying its right to certain moneys and property in the hands of the trustee of E. M. Newton & Co., bankrupts.

Ernest S. Ellis (Webber & Webber, on the brief), for appellant.

R. L. Searcy and William H. Arnold, for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. The appellant intervened in the bankruptcy proceedings, claiming to be the owner of certain goods, notes, and accounts under the terms of a written contract made with the bankrupts about a year before the proceedings were instituted. The contract provided, in substance, that appellant should sell goods to the bankrupts to be resold by them in the usual course of their business in Arkansas, but that the title to and right of possession of all goods delivered under the contract and of all proceeds of resales thereof, whether in cash, note, or book account, should be vested and remain in appellant until the purchase price had been fully paid to it; that,

except for the right to resell the goods in the ordinary course of their business, the bankrupts should not remove them from the city in which they were doing business; also that they should keep the goods insured for the benefit of appellant. The contract was not recorded. Thereafter, and at a time when the bankrupts were insolvent and appellant knew it, they turned over to appellant the remainder of the goods then on hand and certain notes and accounts, which were claimed to be proceeds of other goods obtained under the contract and resold by them to their customers. The notes were indorsed and the accounts assigned in writing to appellant. Three days afterwards voluntary proceedings in bankruptcy were commenced and an adjudication was made. A receiver was appointed, who demanded possession of the property from appellant. The demand was refused. Subsequently, however, the goods, notes, and accounts were delivered to the receiver under a written stipulation made with the approval of the referee in bankruptcy that the appellant should not be prejudiced thereby; that, while the property might be converted into cash, the proceeds should be held to abide the final determination of the controversy as to the ownership. The receiver succeeded himself as trustee. The goods were sold, and part of the notes and accounts were collected by him. By its intervention the appellant sought the proceeds of the sale and the collections and such of the notes and accounts as remained on hand. On final hearing the district court held that the contract under which appellant sold the goods to the bankrupts was in effect a chattel mortgage, and not a contract of conditional sale; that it contemplated that the bankrupts as mortgagors should retain possession of the goods with authority to resell them in the usual course of their business, and without obligation to pay over the proceeds to the appellant; and that it was therefore fraudulent and void under the doctrine of Twyne's Case, 1 Smith, Lead. Cas. (7th Am. Ed.) 52, obtaining in Arkansas.

The case must be considered upon the assumption that the goods which were returned to the appellant three days before the commencement of the bankruptcy proceedings were part of the identical goods originally sold by it to the bankrupts under the contract, and also that the notes and accounts were proceeds of like goods. When the bankruptcy proceedings were commenced, the appellant was in the possession of the goods, notes, and accounts and claimed them adversely to the receiver. It refused to surrender them until a stipulation recognizing the verity of the facts as claimed by it to exist was made with the approval of the referee. Upon the faith of that stipulation the court of bankruptcy acquired possession. By voluntarily yielding possession of property which was to be the subject of litigation the appellant parted with an advantage well recognized in the law; and the agreement that its rights should not be prejudiced thereby, and that the facts existed upon which its claim of title was predicated, should not be permitted to be repudiated, especially since it received the solemn sanction of the court of bankruptcy, and since the trustee whose present possession depends upon the act of the receiver holds fast to the advantage secured. There was no fraud practiced by the appellant in securing the stipulation, and the fact that the receiver and referee may possibly have acted improvidently affords no suf-

ficient cause for ignoring its terms. Therefore, the only questions that are open are those which arise from the face of the original contract, the failure to record it, and the fact that the appellant secured possession of the property on the eve of the proceedings in bankruptcy with knowledge of the insolvent condition of the bankrupts.

We are not able to assent to the contention that the contract authorized the bankrupts to resell the goods in the usual course of their business without obligation to pay the proceeds to appellant. The appellant expressly reserved the title to the proceeds, in whatever form they might be, and the right to take possession of the notes and accounts arising from resales and collect them for itself. They were property of appellant in the hands of the bankrupts. An obligation of the bankrupts to account for and pay over what they collected of the proceeds is implied, and a default in performing it would be a breach of contract as much as if a mortgagor of chattels without power of sale should nevertheless dispose of the mortgaged property and appropriate the proceeds to his own use. Whether the contract under which appellant claims is one of conditional sale or is a chattel mortgage, and, as between the parties thereto, whether it is valid, and what the effect of the failure to record it may be, are questions to be determined exclusively by the local law. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. Whatever may be the law in some jurisdictions it is authoritatively settled in Arkansas that a contract of conditional sale is valid notwithstanding it contains a provision that the vendee may sell the property in the usual course of his business.

Triplett v. Implement Co., 68 Ark. 230, 57 S. W. 261, involved a contract of that character, and the conditional vendor was allowed to recover the goods from the vendee's assignee in insolvency who had taken possession of them. The court cited with approval Perkins v. Mettler, 126 Cal. 100, 58 Pac. 384, Dewes Brewing Co. v. Merritt, 82 Mich. 198, 46 N. W. 379, 9 L. R. A. 270, and Baring v. Galpin, 57 Conn. 352, 18 Atl. 266, 5 L. R. A. 300. In one of these cases the contract of conditional sale of a stock of merchandise expressly provided that the vendee might resell in the usual course of business, and in the other two cases resales by the conditional vendees were held to have been in contemplation. In all of them the contracts were sustained as contracts of conditional sale. The contract involved in the Arkansas case provided that the title of the vendor should extend, not only to the property, but also to the proceeds of sales thereof made by the vendee. It is true that, in this connection, the court observed that, if the goods were sold by the vendee, they were to be sold as the property of the vendor, but we are unable to perceive how this difference is of importance in considering the peculiar circumstances of this case. If a conditional vendee sells the goods and mingles the proceeds with proceeds of his own goods so that they become indistinguishable, the vendor may lose title, but the case before us presents no such difficulty. It was expressly agreed in the stipulation that the notes and accounts involved here were the proceeds of goods

delivered to the bankrupts under the contract of conditional sale, and that agreement obviates all difficulties in tracing title. Observing the terms of the stipulation, there was no admixture of the proceeds of sales by the bankrupts with the proceeds of other goods. It was as though no other goods had been sold or as though the sales had been made in the name of the appellant and the notes and accounts taken accordingly. Therefore, under the stipulation and the rule of Triplett v. Implement Co., it must be held that, as between the appellant and the bankrupts, the former was the owner of the goods, notes, and accounts in controversy. And further that, under the doctrine obtaining in Arkansas, it would have remained such owner even had an assignee in insolvency of the vendee first secured possession of them. There is no law in Arkansas requiring a contract of conditional sale to be filed or recorded in any public office.

Notwithstanding the views which this and other courts have at times entertained as to the effect of an adjudication in bankruptcy, and the right and title of the trustee resulting therefrom, it has been definitely settled by the Supreme Court that the trustee is vested with no better right or title than belonged to the bankrupt; that he stands simply in the shoes of the bankrupt, and as between them he has no greater right. York Mfg. Co. v. Cassell, supra. The right of appellant in this case did not first come into existence when it took possession of the property in controversy on the eve of the bankruptcy proceedings. On the contrary, it was secured by the contract which was executed almost a year before, and it is that date which we must regard rather than the date when possession was taken.

The order of the District Court must therefore be reversed, and the cause remanded for further proceedings in conformity with this opinion.