## DUNLOP v. MERCER et al.

## In re DUNLOP.

(Circuit Court of Appeals, Eighth Circuit. October 31, 1907.)

Nos. 86, 2,711.

**1. Sales—"Conditional Sale"—Definition—Contract in Question.**

A conditional sale is one in which the vesting of the title in the purchaser is subject to a condition precedent, or in which its revesting in the seller is subject to a failure of the buyer to comply with a condition subsequent.

An agreement that the purchaser will buy and pay for merchandise, that he may sell it in the regular course of his business, but that the proceeds shall be applied as a credit or as collateral security to the debt of the vendee at the option of the vendor, and that the latter will sell and deliver the goods on condition that the title to them shall remain in him until the notes and accounts of the vendee are paid in cash, is a valid contract of conditional sale.

[Ed. Note.—For cases in point. see Cent. Dig. vol. 43, Sales, § 1321.

For other definitions, see Words and Phrases, vol. 2, pp. 1408–1410.]

**2. Same—Option of Purchaser to Pay is Not an Indispensable Element.**

An option in the purchaser to pay, or to refuse to pay, for the property, is not essential to a conditional sale.

**3. Same—Permission to Vendee to Sell and to Apply Proceeds to His Debt does Not Render Contract Voidable.**

A stipulation that the purchaser may sell the merchandise in the regular course of business, and that he shall apply the proceeds to his debt as a credit or as collateral security, at the option of the vendor, does not render such a contract fraudulent or voidable against creditors. It does not make it a chattel mortgage with a secret lien.

**4. Same—Bankruptcy—Failure to Record.**

The failure to record a contract of conditional sale renders it voidable by attachment creditors, judgment creditors, and bona fide purchasers only, in Minnesota; and, where there were no such creditors and purchasers when the petition in bankruptcy was filed, such failure did not render it voidable by the trustee, because he had no better title, in the absence of fraud, than the vendee and his creditors had at the filing of the petition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1370.]

**5. Bankruptcy—Section 70a (5) is Inapplicable to Property Held by the Vendee Under Such Contract.**

Section 70a (5) of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451]), is inapplicable to property held by a bankrupt purchaser under such a contract. The "property which prior to the filing of the petition he could by any means have transferred" is property which he could have transferred lawfully on the same terms that he transfers it by law to the trustee. It does not include property of a third party which he was authorized to transfer only on condition that he sold it for value, or on condition that he sold it and held the proceeds for its owner.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 199.]

**6. Sales—Conditional Sale—Foreign Corporation Statute—If Contract Void, Title to Unsold Property Still in Vendor.**

If a contract of conditional sale is void because violative of a statute which permits a foreign corporation to do business in the state only upon certain conditions, and prescribes penalties other than the invalidity of contracts for doing business without a compliance with the conditions,

156 F.—35

it is void in every part, and the property in the possession of the vendee under it for which he has not paid remains the property of the vendor.

**7. SAME—CONTRACT OF ABSOLUTE SALE—SAME.**

If a contract of absolute sale is void for the same reasons, and the property sold remains in the possession of the vendee, who has not paid for it, an implied contract to return it arises, and the property or its value may be restored to the vendor. Pullman's Palace Car Company v. Central Transportation Co., 171 U. S. 138, 151, 18 Sup. Ct. 808, 43 L. Ed. 108.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1420.]

**8. CORPORATIONS—FOREIGN CORPORATION STATUTE OF MINNESOTA—CONTRACTS OF FOREIGN CORPORATIONS DOING BUSINESS WITHOUT COMPLIANCE ARE NOT VOID.**

The statute of Minnesota provides that before a foreign corporation of the character of the vendor here shall be authorized to do business in the state, or to acquire or hold property, or to maintain suits in its courts, it shall have a public place of business in the state, shall appoint a resident agent to accept service of process, and, perhaps, shall pay a license fee, and that, if such a corporation does business in the state and fails to comply with these conditions, it shall be subject to a fine of $1,000, and shall not be permitted to maintain any suit or action in the courts of the state. *Held:*

Contracts innocent or beneficial in themselves, made by foreign corporations while doing business in the state without complying with this statute, were not intended to be and were not made void thereby. The purpose and effect of the statute were to require foreign corporations doing business in the state to subject themselves to the jurisdiction of its courts and to a compliance with the other prescribed conditions, and in case of their failure to do so to refuse to permit them to use those courts to maintain their suits and to impose upon them a penalty of $1,000 for each offense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2540.]

**9. CONTRACTS—ILLEGAL CONTRACTS NOT ALWAYS VOID—EXCEPTION WHEN THAT PENALTY IS NOT PRESCRIBED AND IS MANIFESTLY NOT INTENDED.**

The general rule that illegal contracts are void is not of universal application.

It is qualified by the exception that where a contract is not evil in itself, and its invalidity is not denounced as a penalty for its violation by the express terms of the statute, or by rational implication from the language of the statute which it violates, and that statute prescribes other specific penalties, it is not the province of the courts to do so, and they will not thus affix an additional penalty not intended by the lawmaking power.

The true rule is that the court should carefully consider in each case the entire statute which prohibits an act under a penalty, its object, the evil it was enacted to remedy, the effect of holding contracts in violation of it to be void, for the purpose of ascertaining whether or not the Legislature intended to make agreements violative of it void, and if from all these considerations it is manifest that the Legislature had no such intention, such contracts should be sustained and enforced; otherwise, they should be adjudged void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 681–699.]

**10. COURTS—FEDERAL COURTS—MINNESOTA STATUTE NOT INTENDED TO, AND IT DOES NOT, AFFECT JURISDICTION OF FEDERAL COURTS.**

The provision of the Minnesota statute which prohibits unqualified foreign corporations doing business in that state from maintaining suits in its courts, was not intended to, and it does not, restrict or affect the power or duty of the national courts to determine controversies in bankruptcy proceedings or other controversies of which the Constitution and the acts of Congress gave them jurisdiction.

The power of the federal courts was not granted by, and it may not be revoked, impaired, or restricted by, any law or act of a state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Courts, §§ 795, 796.]

(Syllabus by the Court.)

No. 2,711: Appeal from the District Court of the United States for the District of Minnesota.

No. 86, Original: Petition to Revise Proceedings of the District Court of the United States for the District of Minnesota, in Bankruptcy.

Geo. S. Grimes (Victor J. Welch and Frank R. Hubachek, on the brief), for appellant.

Nathan H. Chase (M. H. Boutelle, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. Two corporations of Arizona, which had been doing business in Minnesota, were adjudged bankrupts in the United States District Court in that state. The trustee of one of them, of the Waterbury-Zimmer Implement Company, filed a petition in the court below in the matter of the bankruptcy of the other, the Western Implement Company, for an order that certain vehicles, machinery, and other merchandise, which were in the possession of the Western Company when it was adjudged a bankrupt and thence came to the possession of the trustees of its estate, be delivered to the trustee of the property of the Zimmer Company, because, as he alleged, this property had been sold and delivered by the Zimmer Company to the Western Company under an agreement, dated February 5, 1906, to the effect that the title and ownership thereof should remain in the vendor until the goods were paid for in cash, and no payment on account of them had been made. The trustees of the Western Company defended on the grounds that the contract was not made until September 8, 1906, after most of the property had been delivered; that it was made with the intent to defraud the creditors of the Western Company; that it was withheld from record with like intent; that the Zimmer Company was not qualified to do business in Minnesota until June 30, 1906, after the larger part of the property had been delivered; and that the contract on its face evidenced an absolute sale of the property to the Western Company. Evidence was introduced, and the court overruled all the defenses except the last, but sustained that, and denied the prayer of the petition. This ruling was assigned as error, and the case is presented by petition to revise and by appeal. As it involves the consideration of the evidence of the relation of the parties and of their acts in making and performing the contract, it will be considered on the appeal, and the petition to revise is dismissed.

While the evidence is not conclusive, and there is proof of suspicious circumstances surrounding the execution and performance of the contract, the conclusion of the court below that the agreement was made on or about February 5, 1906, the day of its date, that it was not made nor withheld from record with any actual intent or purpose to defraud the creditors of the Western Company, and that the vehicles and mer-

chandise in question were delivered by the Zimmer Company to the Western Company in the performance of the contract, and in that way came to the possession of the trustees of its estate, is supported by the weight of the testimony and is affirmed. Counsel insist, however, that if there was no actual intent to defraud, yet the contract upon its face evidenced an absolute sale, so that the title to the property delivered under it vested in the Western Company before it was paid for. The terms of the agreement pertinent to this question are that the Zimmer Company, in selling the goods to the Western Company, does so with the distinct understanding that the title to them shall remain in the Zimmer Company until all the accounts and notes of the Western Company are paid in cash, when the former will give a bill of sale of the remaining goods to the Western Company, and that the Western Company shall have the privilege of selling the articles shipped in the regular course of business, with the understanding that their proceeds shall remain the property of the Zimmer Company, to be held as collateral or credited on the notes or accounts of the Western Company at the option of the Zimmer Company. Does this contract evidence an absolute or a conditional sale?

A conditional sale is one in which the vesting of the title in the purchaser is subject to a condition precedent, or in which its revesting in the seller is subject to a failure of the buyer to comply with a condition subsequent. In re Columbus Buggy Company, 74 C. C. A. 611, 613, 143 Fed. 859, 861. The provision of this contract that the title to the goods delivered under it should remain in the vendor until the notes and accounts of the vendee had been paid in cash, and that when they were so paid the vendor would execute a bill of sale of the goods remaining in the vendor's possession, discloses the intention of the parties to impose, and effectually imposes, the precedent condition of the payment of the notes and accounts of the vendee upon the vesting of the title to the property in the Western Company. There is no other rational explanation of its presence in the agreement. It could have been inserted for no other purpose, it can have no other effect, and it cannot be annulled or disregarded by construction in the absence of conflicting terms in the contract. No such terms are perceived. The provision that the vendor might sell the merchandise in the regular course of its business, with the understanding that the proceeds should remain its property and be held as collateral to or credited upon the notes and accounts of the vendee, is not inconsistent, but consonant, with the retention of title to the unsold goods in the vendor. The option of the latter, there secured, was not to recover or to transfer the title to the goods, but to credit the proceeds or to hold them as collateral security. It had no right under the contract to require a restoration of the goods if the purchaser paid the agreed prices for them. The purchaser had no option to pay for, or to return, the property, but was bound to the vendor by an enforceable obligation to pay the agreed prices for the goods it ordered. The agreement has every element of a conditional sale—a vendor, a vendee, agreed prices, an obligation of the vendee to pay them, an obligation of the vendor that, upon condition that the vendee pays the agreed prices, but not otherwise, the title of the vendor shall vest in the pur-

chaser. Thus it evidenced a sale in which the vesting of the title in the vendee was made subject to a condition precedent, and it became a contract of conditional sale. Bierce v. Hutchings, 205 U. S. 340, 348, 27 Sup. Ct. 524, 51 L. Ed. 828.

The arguments and decisions in Andrews v. Bank, 20 Colo. 313, 36 Pac. 902, 46 Am. St. Rep. 291, and Herryford v. Davis, 102 U. S. 235, 26 L. Ed. 160, to the effect that contracts, in some respects similar to that in hand, evidence absolute sales, chattel mortgages, and secret liens, because the purchasers are absolutely bound to pay the agreed prices and have no option to pay, or to refuse to pay, and because the only right of the sellers was to take and sell the property to pay the debt, have been considered, but they are not persuasive. It is not true in the case under consideration that the only right of the vendor to the property remaining in the hands of the vendee was the right to take and sell it, to pay the latter's debt. It had the right, upon the default of the purchaser, to take and keep it as its own, without selling it or applying the proceeds of it to pay the vendor's debt, and the legal effect of that taking, under the established rule of property in Minnesota would be to annul the obligation to pay the agreed price of the property taken. Aultman v. Olson, 43 Minn. 409, 45 N. W. 852; Harvester Works v. Hally, 27 Minn. 495, 8 N. W. 597; Keystone Mfg. Co. v. Casselius, 74 Minn. 115, 76 N. W. 1028; Alden v. Dyer, 92 Minn. 134, 99 N. W. 784. Nor is it true that an option in the purchaser to pay, or to refuse to pay, for goods it buys, is an indispensable element of a conditional sale. An agreement that the title shall vest in the purchaser, and that the sale shall become effective only on condition that the purchaser pays the notes · he has given for, or performs an absolute promise he has made to pay the purchase price, is as valid and as conclusively evidences a conditional sale as a stipulation that the title shall pass on condition that he agrees to pay the purchase price or that he pays the purchase price he has not agreed to pay. Bierce v. Hutchings, 205 U. S. 340, 348, 27 Sup. Ct. 524, 51 L. Ed. 828; Harkness v. Russell, 118 U. S. 663, 667, 679, 680, 7 Sup. Ct. 51, 30 L. Ed. 285; In re Great Western Manufacturing Co., 81 C. C. A. 341, 152 Fed. 123, 125.

The next contention of counsel for the trustees of the Western Company is that the agreement was fraudulent and voidable against the trustees, because it permitted the conditional vendor to sell the merchandise in the regular course of business, but provided that the proceeds should be credited upon its notes and accounts, or held as collateral security therefor, and because it was not filed or recorded in due time in any public office; and they cite authorities from New York, Illinois, and Oregon, which sustain that position. In re Garcewich (N. Y.) 115 Fed. 87, 53 C. C. A. 510; In re Carpenter (D. C. N. Y.) 125 Fed. 831; In re Galt (D. C. Ill.) 120 Fed. 443; In re Rodgers (Ill.) 125 Fed. 169, 177, 60 C. C. A. 567; In re Rasmussen's Estate (D. C. Or.) 136 Fed. 704, 706. But the general rule and the weight of authority in this country, the established rule of property in Minnesota, and the established rule in this court are otherwise. Trustees of bankrupt estates have no better title, in the absence of fraud, than the bankrupt and his creditors had at the time of the fil-

ing of the petition in bankruptcy. Hewit v. Berlin Machine Works, 194 U. S. 296, 297, 303, 24 Sup. Ct. 690, 48 L. Ed. 986; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 26 Sup. Ct. 481, 50 L. Ed. 782; In re Great Western Mfg. Co., 81 C. C. A. 341, 152 Fed. 123, 125. Agreements of conditional sale, whereby the title is retained in the vendor until the agreed purchase price is paid, which are not filed or recorded in any public office, are voidable by bonâ fide purchasers, attaching creditors, and judgment creditors only, under the statutes of Minnesota (Rev. Laws Minn. 1905, § 3476; Clark v. B. B. Richards Lbr. Co., 68 Minn. 282, 288, 71 N. W. 389; Bradley Clark & Co. v. Benson, 93 Minn. 91, 94, 100 N. W. 670), and there were no such purchasers or creditors in this case.

Contracts of conditional sale whereby the title is retained in the vendor until payment of the purchase price, and the vendee is permitted to sell the goods in the regular course of business on condition that he applies the proceeds in payment, or as security to pay the purchase price, do not constitute chattel mortgages with secret liens, but are valid agreements of conditional sales in the state of Minnesota. Bradley Clark & Co. v. Benson, 93 Minn. 91, 94, 100 N. W. 670; In re E. M. Newton & Co. (C. C. A.) 153 Fed. 841, 844; In re Great Western Mfg. Co., 81 C. C. A. 341, 152 Fed. 123, 125.

The suggestion that this property vested in the trustee under section 70a (5) of the bankruptcy law (30 Stat. 566, c. 541; U. S. Comp. St. 1901, p. 3451; Act July 1, 1898) is not well founded. A trustee is not a purchaser for value. The "property which prior to the filing of the petition, he [the bankrupt] could by any means have transferred" within the meaning of this clause of section 70, is property that he could by any means have transferred to another lawfully under the same terms that he transfers it by law to the trustee; that is to say, without consideration. It does not include the property of another, which the bankrupt is authorized to transfer only on the condition that he sells it for value, or sells it and holds its proceeds for its owner. And this property could not have been lawfully "levied upon and sold under a judicial process against" the bankrupt at the time the petition in bankruptcy was filed. The result is that the contract evidenced a sale on the lawful condition that the notes and accounts owing by the Western Company to the Zimmer Company were paid in cash. They were never paid. The title and ownership of the property, which remained in the possession of the Western Company when the petition against it was filed, had never vested in it, and hence they never passed to the trustees of its estate, because the condition of the sale was never fulfilled. They are still in the Zimmer Company.

The Zimmer Company made this contract and carried on this business under it in the state of Minnesota, without complying with its laws, which provide that before such a corporation "shall be authorized or permitted to transact any business in this state, or to continue business herein if already established, or to acquire, hold or dispose of property within this state, or to sue or maintain any action at law or otherwise in any of the courts of this state," it shall have a public

office in the state, shall appoint an agent resident therein to accept service of process, and perhaps shall pay a license tax, and that if any such corporation doing business in the state neglects or fails to comply with these conditions it shall be subject to a fine of $1,000, and shall not maintain any suit or action in any of the courts of the state. Rev. Laws Minn. 1905, §§ 2888, 2889, 2890. This statute has received the consideration of the highest judicial tribunal of Minnesota, and it has held that such a foreign corporation cannot maintain an action in the courts of that state to recover the purchase price of goods sold by it in the transaction of business in the state without complying with the conditions of this statute (G. Heileman Brewing Co. v. Peimeisl, 85 Minn. 121, 124, 125, 88 N. W. 441; Sherman Nursery Co. v. Aughenbaugh, 93 Minn. 201, 204, 100 N. W. 1101), or for the recovery of moneys collected for it by its agent on account of the sale of its goods and evidenced by the agent's note (Thomas Mfg. Co. v. Knapp, 101 Minn. 432, 112 N. W. 989, 992). The reason which induced the Supreme Court of Minnesota to reach these conclusions, as we understand its opinions, was not that the contracts upon which the actions were brought were void because violative of the statute, but it was that the state had the undoubted right to exclude foreign corporations which would not submit themselves to the jurisdiction of the courts of the state from the privilege of enforcing rights and litigating controversies in those courts, and that it had clearly done so in the cases which have been cited.

But the provision of the state statute which forbids the maintenance of suits in the courts of that state was not intended to apply to, and it does not affect, suits and proceedings in the federal courts. A state is without power to prohibit or condition the exercise by a foreign corporation of its right to institute and defend its suits in the national courts and to invoke their independent judgment upon its controversies in the cases and in the manner prescribed by the Constitution and laws of the United States, which are the supreme law of the land. By section 8, art. 1, of the Constitution, the Congress was empowered to establish "uniform laws on the subject of bankruptcy throughout the United States" and by the bankruptcy law of July 1, 1898 (30 Stat. 546, c. 541, § 2 (7) [U. S. Comp. St. 1901, p. 3421]), jurisdiction was conferred on the District Courts of the United States to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto except as herein otherwise provided." This jurisdiction was not granted by, and it could not be revoked, annulled, or impaired by, the law or act of any state. Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260; Barber Asphalt Pav. Co. v. Morris, 66 C. C. A. 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Butler Bros. Shoe Co. v. U. S. Rubber Co. (C. C. A.) 156 Fed. 1, and the cases there cited.

There is nothing in the opinion of the Supreme Court in Missouri, Kansas & Texas Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474, which is cited by counsel for appellees, in conflict with this principle. The legal effect of that decision is that a federal court may enforce a new right created, or administer a new remedy given, by a state to its citizens according to the terms of the state stat-

ute which provides it to the same extent as may the courts of the state. National Surety Co. v. State Bank, 120 Fed. 593, 603, 56 C. C. A. 657, 61 L. R. A. 394; Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 949, 66 C. C. A. 55, 67 L. R. A. 761. In that case the state of Minnesota had by statute granted to the makers of usurious obligations the right to have them canceled by the courts of the state, as the Supreme Court of that state held, without repaying the moneys which they had borrowed upon them; and the Supreme Court of the United States decided that, where a suit for such a cancellation founded upon the state statute was pending in a national court, the complainant was entitled to the same measure of relief under the statute that he could obtain in the courts of the state. If there was a statute of the state of Minnesota which provided that, whenever a foreign corporation in the conduct of unauthorized business in that state delivered any of its property to a vendee upon the condition that the title and ownership of it should remain in the vendor until the vendee paid for it, the vendee might immediately maintain a suit against the vendor in the courts of the state to confiscate that property to the use of the vendee without paying the vendor any compensation for it, and if the courts of the state had sustained suits of that nature and had granted complainants in such actions judgments of confiscation therein, there might be some analogy between the Krumseig Case and the controversy now in hand; but no such statute has been enacted, and no such decision has ever been rendered.

This is the situation in the case at bar: A controversy has arisen in the court of bankruptcy regarding the ownership of a part of the estate of the Western Company which is in the possession of that court for administration. The Constitution and the act of Congress invested the federal courts with the power, which may not be lawfully renounced, and imposed upon them the duty, the discharge of which they may not rightfully evade, to determine that controversy by the exercise of their independent judgment according to the very right of the matter (Chicot County v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546; Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 952, 66 C. C. A. 55, 67 L. R. A. 761), and the statutes of Minnesota have not deprived them of that power or relieved them from the performance of that duty.

But counsel argue with great ability and admirable ingenuity that the contract of conditional sale was violative of the qualifying statute, that it was consequently void, and therefore that the title and ownership of the property vested in the Western Company. But the premises of this syllogism fail to support its conclusion. If the contract was void because the corporation was not authorized to do business in Minnesota under its statutes, it was void in every part—in the agreement to sell, in the condition of the sale, and in the agreement to buy. An agreement of absolute sale would have been equally void. The contract was that the title and ownership of this property, which was in the vendor, should pass to the Western Company on condition that it paid its notes and accounts, and not otherwise, and that the Western Company would pay them. The latter company defaulted, and, if the agreement was valid, the ownership and title remained in

the vendor. If the agreement was void, then there was no contract that the Western Company should pay the agreed price for the goods, or that the Zimmer Company would sell them, or that the ownership or the title to them should ever pass to the Western Company, either with or without condition, and they remained in the vendor. If the fact that the corporation could not lawfully make any contract whatever in Minnesota concerning these goods made its conditional sale of them upon which the minds of the parties met void, it could not have had the effect to create a contract of absolute sale to which neither party agreed, and which would have been equally void. What the appellees really ask here is that because, as they contend, the agreement of conditional sale was illegal and void, this court of equity shall make for the parties a new agreement of absolute sale to which neither of them agreed, and which would have been equally void, and that it proceed to enforce this new agreement, so that the creditors of the vendee may appropriate to themselves property of the value of about $12,000 which belongs in equity to the creditors of the vendor. This petition does not appeal with compelling force to the conscience of a chancellor, and it must be denied. The title and ownership of the property in controversy remained in the Zimmer Company, and they never passed to the Western Company, or to its trustees, whether the effect of the statutes of Minnesota relative to the authority of a foreign corporation to do business in that state rendered the contract of sale void or left it valid.

Moreover, if the sale had been an absolute one, and if it had been void, the trustee of the Zimmer Company might still have recovered this property. In Pullman's Palace Car Co. v. Central Transportation Co., 171 U. S. 138, 151, 18 Sup. Ct. 808, 43 L. Ed. 108, the Central Company had made a lease which was beyond its powers, in restraint of trade, against public policy, illegal, and void. Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24, 53, 11 Sup. Ct. 478, 35 L. Ed. 55. It had made this lease in the year 1870, and had thereby stripped itself of all its property, and the lessee, which had been in possession of this property and of its proceeds under this void contract for more than 10 years, refused to perform its part of the agreement, or to deliver back or to account for the property, it had received. The Supreme Court held the contract illegal and void, but compelled the lessee to pay back to the lessor $17,000 in cash and the value of the cars and other property which it had received from the lessor under the void agreement, and which amounted in all to $727,846.50 and interest. That court said:

"The courts, while refusing to maintain any action upon the unlawful contract, have always tried to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it." Central Transp. Co. v. Car Co., 139 U. S. 60, 11 Sup. Ct. 488, 35 L. Ed. 55; Pullman's Palace Car Co. v. Central Transp. Co., 171 U. S. 150, 18 Sup. Ct. 808, 43 L. Ed. 108.

If, as counsel for the appellees claim, the contract evidenced an absolute sale, and it is void, no payment has ever been made for the property under consideration which the vendee and the trustees of its es-

tate obtained under this agreement. No legal obstacle is perceived, in the light of the decision in Pullman's Palace Car Company's Case, to requiring them to restore it to the trustee of the vendor for the benefit of its creditors to whom it in equity belongs, and no court which strives to do justice and succeeds would fail to do so. There would be in such a case an implied and an enforceable contract by the vendee to return the property, or its value, which it had secured without consideration under the void contract. Planters' Bank v. Union Bank, 16 Wall. 483, 21 L. Ed. 473; In re Hovey's Estate, 198 Pa. 385, 48 Atl. 311, 315.

But was the contract void? Its only infirmity was that the Zimmer Company failed to comply with the regulations of the statute of Minnesota which conditioned its authority to make the contract, regulations with which it had ample power to comply, and that the statute imposed a penalty of $1,000 and a disqualification to maintain suits in the courts of that state for a failure to comply with those regulations. The making and performance of the agreement were not morally wrong. In the absence of the statute there was no more evil in the doing of business by a foreign corporation in the state of Minnesota without a principal place of business, an appointed agent to accept service, and the payment of a license tax, than there was in so doing with them. The business which this corporation transacted was not, like the sale of liquor, a peril to the welfare of the citizens of the state and subject to regulation by its police power. It was the sale of machinery. It was a transaction of commerce, which was a benefit to the state and to its people. There was no moral turpitude and no peril to the citizens in the making or the performance of this contract. Still, it was undoubtedly violative of the statute and illegal.

Counsel invoke the general rules that an illegal contract, a contract in violation of the law of a state, is void and unenforceable in any court sitting in the state, and that the federal courts follow the construction of the Constitution and statutes of a state given by its highest judicial tribunal in cases which involve no question of general jurisprudence, of commercial law, or of right under the Constitution and laws of the United States, and they cite Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, in which the Supreme Court held that the contract of an unqualified foreign corporation for the sale of an engine and machinery in Colorado was not void because in making that sale the corporation was not doing business within the state of Colorado and because the business which it transacted was interstate commerce; Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759, in which a contract for the sale of liquor in Chicago without a license was held void, with the prefacing statement that its sale was a peril to the welfare of the community and its regulation within the police power of the state; Diamond Glue Co. v. U. S. Glue Co., 187 U. S. 611, 613, 23 Sup. Ct. 206, 47 L. Ed. 328, in which a contract of an unqualified corporation to superintend the construction of and to operate a glue factory in the state of Wisconsin was held void under the statute of that state, which expressly declared, and which the Supreme Court of that state had held, made such a contract "wholly void" on behalf of the foreign corporation, but valid and enforceable

against it in favor of the other party to the agreement (Ashland Lumber Co. v. Detroit Salt Co., 114 Wis. 66, 89 N. W. 904); Chattanooga N. B. & L. Ass'n v. Denson, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. Ed. 870, in which a note and mortgage taken by an unqualified corporation in Alabama were held void because the Supreme Court of the state had held like contracts void under a statute of that state; Trust Company v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474, which has been reviewed supra; and Kibbe v. Stevenson Iron Min. Co., 136 Fed. 147, 69 C. C. A. 145, and other cases which do not relate to this specific question. Many other cases, however, which treat of this subject, have been carefully read and considered, and they are cited, and some of them are reviewed, in Butler Bros. Shoe Co. v. U. S. Rubber Company (C. C. A.) 156 Fed. 1, which was considered and decided with this case, and to which reference is made for citations.

The general rule that an illegal contract is void and unenforceable is, however, not without exception. It is not universal in its application. It is qualified by the exception that where a contract is not evil in itself, and its invalidity is not denounced as a penalty by the express terms of or by rational implication from the language of the statute which it violates, and that statute prescribes other specific penalties, it is not the province of the courts to do so, and they will not thus affix an additional penalty not directed by the lawmaking power. Fritts v. Palmer, 132 U. S. 282, 289, 293, 10 Sup. Ct. 93, 33 L. Ed. 317; National Bank v. Matthews, 98 U. S. 621, 629, 25 L. Ed. 188; Logan County Bank v. Townsend, 139 U. S. 67, 76, 11 Sup. Ct. 496, 35 L. Ed. 107, 13 Sup. Ct. 66, 36 L. Ed. 956; Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 896, 897, 58 C. C. A. 79, 82, 83; Sioux City, etc., Co. v. Trust Co., 82 Fed. 124, 134, 27 C. C. A. 73, 83; Hanover Nat. Bank v. First Nat. Bank, 109 Fed. 421, 426, 48 C. C. A. 482, 487; Speer v. Board of County Com'rs, 88 Fed. 749, 758, 32 C. C. A. 101, 110; National Bank of Xenia v. Stewart, 107 U. S. 676, 2 Sup. Ct. 778, 27 L. Ed. 592; Gold Mining Co. v. Nat. Bank, 96 U. S. 640, 24 L. Ed. 648; O'Hare v. Bank, 77 Pa. 96; Pangborn v. Westlake, 36 Iowa, 546; Chattanooga R. & C. R. Co. v. Evans, 14 C. C. A. 116, 121, 122, 66 Fed. 809, 815.

The case of Fritts v. Palmer, 132 U. S. 282, 287, 10 Sup. Ct. 93, 33 L. Ed. 317, is an apt and striking illustration of this exception. The Constitution of Colorado read, "No foreign corporation shall do business in the state without having one or more known places of business, and an authorized agent or agents upon whom process may be served," and the statutes required that such a corporation before doing any business in the state should file a certificate of its articles and appoint an agent upon whom service of process could be made. They expressly prohibited any foreign corporation from doing any business and from purchasing or holding any real estate until it had filed its articles and appointed its agent, and they imposed as a penalty for a violation of this prohibition the personal liability of every officer, agent, and stockholder of the corporation for the obligations incurred by it while it was doing business in the state in violation of the statutes. A foreign corporation acquired, held, and conveyed real estate in Colo-

rado in violation of this Constitution and these statutes. The Supreme Court held that the deeds were illegal, but that they were valid, and that they conveyed the property, and it sustained the title on the ground that the imposition of the penalty of the personal liability of the officers and stockholders, without any imposition of the penalty that contracts and deeds in violation of the statute should be void, indicated that the Legislature did not intend to make, and did not make, such deeds and contracts void by the statute.

In Harris v. Runnels, 12 How. (U. S.) 84, 85, 86, 13 L. Ed. 901, slaves were brought into the state of Mississippi and sold in violation of a statute of that state which prohibited their introduction without a certificate, under a penalty of $100 for every slave so sold and purchased, and an action was brought and sustained upon a promissory note for the purchase price of the slaves. In defense of the action the rule that an illegal contract is void was invoked. But the Supreme Court, after citing and discussing authorities said:

"We have concluded, before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only, for doing a thing which it forbids, that the statute must be examined as a whole, to find out whether the makers of it meant that a contract in contravention of it should be void, or that it was not to be so; in other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken for granted that the Legislature meant that contracts in contravention of it were to be void in the sense that they were not to be enforced in a court of justice. In this way the principle of the rule is admitted, without at all lessening its force, though its absolute and unconditional application to every case is denied. It is true that the statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the Legislature to void a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary could be properly inferred, a contract in contravention of it is void."

The court then called attention to the fact that the avoidance of the contract would work inequality and injustice, that it would subject the seller to the loss of his slaves and the penalty of $100 upon the sale of each slave, while it would grant to the purchaser a substantial reward for a violation of the law, and it refused to hold the contract void, and rendered judgment for the plaintiff. The rule announced in this case has been repeatedly applied by the Supreme Court, notably in Fritts v. Palmer, supra, and the cases cited in that opinion, and has become an established canon of interpretation in the national courts. The true rule is that the court should carefully consider in each case the terms of the statute which prohibits an act under a penalty, its object, the evil it was enacted to remedy, and the effect of holding contracts in violation of it void, for the purpose of ascertaining whether or not the lawmaking power intended to make such contracts void, and, if from all these considerations it is manifest that the Legislature had no such intention, the contracts should be sustained and enforced; otherwise, they should be held void. Harris v. Runnels, 12 How. (U. S.) 79, 84, 85, 86, 13 L. Ed. 901; Pangborn v. Westlake, 36 Iowa, 546, and cases there cited; Fritts v. Palmer, 132 U. S. 287,

10 Sup. Ct. 93, 33 L. Ed. 317; Kindel v. Lithographing Co., 19 Colo. 310, 314, 35 Pac. 538, 24 L. R. A. 311; Chattanooga R. & C. R. Co. v. Evans, 14 C. C. A. 116, 121, 122, 66 Fed. 809, 815.

Let us apply this rule to the statute of Minnesota. The object of it was not to prohibit or to avoid contracts of foreign corporations for the sale of merchandise. The evil which the Legislature sought to remedy was not the making or the performance of such agreements. Such contracts were not deleterious to the citizens or to the state, but they were beneficial to both. The purpose of the Legislature was to subject foreign corporations doing business in the state to the process of its courts, and perhaps to a license tax; hence it provided that before they should be authorized to do business therein they should appoint agents to accept service of process and should have a public place of business in the state, and that, if they transacted business in the state without making such appointments and complying with the other conditions prescribed, they should not be permitted to maintain suits in the courts of the state and should be subject to a penalty of $1,000 for each offense. The effect of the statute was to provide that, if such a corporation would not subject itself to the process of the courts of the state, it should not be permitted to resort to such courts for relief, and it should pay a penalty of $1,000. There is no declaration in the statute that contracts of unqualified corporations doing business in the state without complying with the prescribed conditions shall be void. So far as we are able to ascertain, the Supreme Court of the state has never held that such was the meaning or the effect of the law. If that had been the purpose of the Legislature, it would have been easy to have made it manifest. A single line would have expressed and accomplished that purpose. The legal presumption is that the Legislature specified all the penalties it intended to impose, and it is not the province of the court to inflict more by construction. If contracts in violation of this statute are void, they are absolutely void, and none of the parties to them can enforce them. Such a result is unjust, inequitable, and inconsistent with the purpose of the law. The terms of the statute prohibit foreign corporations from enforcing contracts of this nature in the courts of the state, but they permit the other parties to the agreements to enforce them by suits in those courts, and they do not prohibit the unqualified foreign corporations from defending such actions. The invalidity of such contracts is inconsistent with these terms of the statute, because, if they are void, neither party can maintain a suit upon them, and the prohibition of the maintenance of such suits by the foreign corporations was futile. If the penalty of the invalidity of such contracts is added by construction to those denounced by the plain terms of the statute, and if, as counsel for the appellees argue, such invalidity deprives parties of any recovery of the moneys or property delivered under them, the effect of the statute would be absurd and iniquitous. Take the case at bar: The vendor would lose and the vendee would gain merchandise worth more than $12,000. The latter would receive a premium of $12,000 for violating the statute, and a penalty of $12,000 more than the statute fixes would be imposed upon the vendor. It happens in this case that the foreign corporation would suffer the penalty, and the other party to the contract would

receive the premium. But suppose that an unqualified foreign corporation, doing business in the state, purchases of a citizen and secures goods upon credit of the value of $12,000, and then refuses to pay for them because it was doing business in the state and the contract is void. It pays a penalty of $1,000 and reaps a reward of $11,000 for violating the statute, while the other party to the agreement pays a penalty of $12,000. The Legislature of Minnesota could never have intended results so unreasonable. The object of the statute, the evil it was intended to remedy, the plain language of the entire act, the inequitable effect of the avoidance of contracts in violation of it, make it manifest that the lawmaking power of the state never intended that contracts of unqualified corporations doing business in the state should be void. The evident intention of the Legislature and the legal effect of the statutes were, in accordance with the plain words it contains, to leave such contracts valid, enforceable in all courts by the parties to them other than the unqualified foreign corporations, but unenforceable in courts of the state by them, and to subject them to a penalty of $1,000 for each violation of the law. The contract in suit was innocent in itself, yet illegal because it was violative of the statute; but it was not void, and the trustee of the vendor was the owner of the property in controversy under it. The order of the court below, which denied his petition for a return of the property or its proceeds, must be reversed, and the case must be remanded to the court below, with instructions to take further proceedings not inconsistent with the views expressed in this opinion.

It is so ordered.