[File No. 5943.]

TOM GREEN, Respondent, v. CONNECTICUT FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, a Foreign Corporation, Appellant.

(237 N. W. 794.)

Opinion filed August 1, 1931, Rehearing denied August 22, 1931.

*Holt, Frame & Nilles,* for appellant.

*B. H. Bradford,* for respondent.

NUESSLE, J.   The plaintiff lived at Minot in Ward County.   In

August, 1926, he bought a Buick automobile. He registered it with the state department in the name of his brother who resided at Flaxton in Burke County, some distance from Minot. When the Uniform Motor Vehicle Anti-Theft Act, enacted as chapter 180, Sess. Laws 1927, went into effect, plaintiff caused his brother to apply for the certificate of title thereby required and such certificate was issued to him. Thereafter applications for renewals of registration were applied for and made in the name of his brother. Thus the matter stood when on June 21, 1929, plaintiff insured the automobile in the defendant Company against theft, robbery and pilferage. The policy ran to the plaintiff with loss payable to him. In his application therefor plaintiff represented that he was the owner of the machine and that there was no lien, mortgage, or other encumbrance thereon. The policy provided it should be void "if the interest of the Assured in the subject of this insurance be or become other than unconditional and sole lawful ownership." At the time the policy was procured, or shortly thereafter, plaintiff told the assured's agent, who issued the policy to him, that the machine was registered in the name of his brother but that he was getting a transfer and would record the transfer. On July 1st he obtained from his brother a bill of sale of the car but procured no assignment of the certificate of title. On the night of July 31st, plaintiff left the car standing on the street in front of the residence where he roomed. In the morning the car was gone. He testified it was taken without his knowledge or consent and that he immediately notified the police and the sheriff, as well as the defendant Company. About a week thereafter the car was found in the Missouri River, some 60 miles from Minot. The new tires which were on it when it disappeared had been removed and old ones placed thereon. The car was so badly damaged that it was worthless. Plaintiff duly filed his proof of loss and made demand upon the Company for payment of the same. This demand was refused and this action resulted. The case was tried to a jury and plaintiff had a verdict. Judgment was entered thereon and this appeal is from said judgment.

When the case was submitted to the jury the trial court charged that there were but two questions to be submitted. First, as to whether the plaintiff was the owner of the car, and, second, if the jury found he was, as to what its value was at the time it was taken.

The following provisions of the Uniform Motor Vehicle Anti-Theft Act, chapter 180, supra, are pertinent in a consideration of this case:

"Section 1. (e) 'Owner'. A Person who holds the legal title to a vehicle or in the event a vehicle is the subject of an Agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this act.

"Section 3. (a) The Department shall not after July 1, 1927, register or renew the registration of any motor vehicle, unless and until the owner thereof shall make application for and be granted an official certificate of title for such vehicle or present satisfactory evidence that a certificate of title for such vehicle has been previously issued to such owner by the Department.

"(b) The owner of a motor vehicle registered in this state shall not after July 1, 1927, operate or permit the operation of any such vehicle upon any highway without first obtaining a certificate of title therefor from the Department, nor shall any person operate such vehicle upon the highways knowing or having reason to believe that the owner has failed to obtain a certificate of title therefor and any person violating this subsection shall be punished as provided in section 19 of this act.

"Section 4. (a) The application for a Certificate of Title shall be made upon the appropriate form furnished or approved by the Department and shall contain a full description of the motor vehicle including the name of the maker, the engine and serial numbers and any distinguishing marks thereon and whether the vehicle is new or used, together with a statement of the applicant's title and of any liens or encumbrances upon said vehicle and the name and address of the person to whom the Certificate of Title shall be delivered and such other information as the Department may require and every application shall be accompanied by a fee of one dollar, which shall be in addition to any fee charged for the registration of such vehicle.

"(b) The owner shall verify every application for a Certificate of Title before a person authorized to administer oaths, and officers and

employees of the Department designated by the Registrar are hereby authorized to administer oaths and it is their duty to do so without fee for the purpose of this act.

"Section 6. (a) The owner of a motor vehicle for which a certificate of title is required hereunder shall not, after July 1, 1927, sell or transfer his title or interest in or to such vehicle unless he shall have obtained a certificate of title thereto nor unless having procured a certificate of title he shall in every respect comply with the requirements of this section and any person who violates the provisions of this section shall be guilty of a misdemeanor and upon conviction shall be punished as provided in section 19 of this act.

"(b) The owner who sells or transfers his title or interest in or to such motor vehicle after July 1, 1927, shall endorse an assignment and warranty of title upon the certificate of title for such vehicle with a statement of all liens or encumbrances thereon (which statement shall be verified under oath by the owner) and the owner shall deliver the certificate of title to the purchaser or transferee at the time of delivering the vehicle.

"(c) The transferee  .  .  .  shall thereupon present such certificate endorsed and assigned as aforesaid to the Department accompanied by a transfer fee of one dollar and make application for and obtain a new certificate of title for such vehicle."

"Section 10.  It shall be unlawful for any person knowingly to make any false statement in any application or other document (required) by the terms of this act and any person violating this provision shall upon conviction be punished as provided in section 18."

"Section 18.  Any person convicted of making a false statement in any application or document under § 10 of this act shall be punished by a fine of not more than one thousand dollars or imprisonment for not more than one year, or by both such fine and imprisonment.

"Section 19. (a) It shall be a misdemeanor for any person to violate any of the provisions of this act unless such violation is by this act or other law of this state declared to be a felony.

"(b) Unless another penalty is in this act or by the laws of this state provided, every person convicted of a misdemeanor for the violation of any provision of this act shall be punished by a fine of not

more than five hundred dollars or by imprisonment for not more than six months, or by both such fine and imprisonment."

Appellant grounds this appeal on two propositions: First, that the plaintiff was not the sole and unconditional owner of the automobile since there had been no compliance with the provisions of the Motor Vehicle Anti-Theft Act, and that therefore the policy was void. Second, that the trial court erred in failing to submit to and in withdrawing from the jury the question as to whether the car was in fact stolen.

· When the plaintiff bought the automobile he caused it to be registered in his brother's name. We do not know, nor are we here concerned, with his reasons for so doing. When the Anti-Theft Act went into effect he caused the certificate of title to be issued in his brother's name and thereafter annually until the car was taken he caused applications to be made for and renewals of registration to be made in his brother's name. Thus on the public record the title stood in his brother's and not in his name. Nevertheless, the fact is that the car was his. He bought it, paid for it, kept possession of it, and he alone used it. While his conduct with respect to the car after the Anti-Theft Act went into effect was illegal, nevertheless it did not operate to divest him of his ownership of the car. That he never procured an assignment of the certificate of title nor in other respects complied with the act, made no difference as to this ownership. Though he was in fact the owner, title ·to the car stood in his brother's name, so he procured a bill of sale from his brother. This vested unconditional title to the car in him unless his noncompliance with the provisions of the statute operated to the contrary. The fact that the transaction was not in accord with· the statute did not necessarily render it void. The general rule is that an illegal contract is void and unenforceable. However there are exceptions to the rule. The transaction here was not in itself evil. Its vice was that it was not effectuated in the manner required by the statute. The statute imposed a penalty for failure to comply with its terms. That penalty was fine and imprisonment. ·It did not also fix as a penalty that any transaction not in accord with its terms should be void. Not having done so in express terms we must assume ·that the legislature did not intend invalidity should be conse-

quent on transgression of the statute. See McCabe v. Williams, 45 N. D. 330, 177 N. W. 378; Dunlop v. Mercer, 86 C. C. A. 435, 156 Fed. 545, 19 Am. Bankr. Rep. 361; Williams v. Stringfield, 76 Colo. 343, 231 Pac. 658. Accordingly we hold that the unconditional and sole lawful ownership of the automobile was in the plaintiff and that the policy is valid and enforceable as against the company.

The second point made by the appellant is that the court erred in not submitting to the jury the question as to whether the car was stolen and in assuming this to be the fact in his instruction. During the trial of the case the plaintiff testified it was stolen. The defendant moved that this testimony be stricken from the record on the ground that the statement was a conclusion of the witness, and the motion was granted. Thereafter evidence was offered tending to show that the plaintiff left the car in the street in front of his residence; that during the night it was taken without his knowledge or consent; that he did not know who took it or where it was; that he at once notified the authorities that it was stolen; and that it was discovered a few days thereafter, sixty miles away in the Missouri River, ruined and worthless. The defendant now insists that on the record there was a question for the jury as to whether the car was stolen; that though there was no affirmative testimony to establish the contrary, nevertheless the jury might not have believed it was stolen, and if the question had been submitted to them might have found it was not. Even so, we do not think that the defendant is in a position to complain. Other than the specific denial in the answer the only indication tending to show that the defendant contested the allegation of theft is the objection to the statement of the plaintiff that the car was stolen on the ground that it was a mere conclusion. This, however, was at the threshold of the case. Nowhere thereafter was any point made that the claim of theft was challenged. The only evidence offered by the defendant was evidence touching the questions of the ownership and value of the car. Though the defendant submitted various requests for instructions, none of these referred to the question of the theft of the car. After a consideration of the whole record the other members of this court are of the opinion (the writer hereof doubting) that the claim of theft was at least tacitly conceded and so the trial court was warranted in withdrawing the question from the jury. A matter

concerning which there is no controversy need not and should not be submitted to the jury. Ziebarth v. Ziebarth, 52 N. D. 439, 203 N. W. 192.

Judgment affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.