In re WADE.

(District Court, W. D. Missouri, S. D.   January 17, 1911.)

No. 421.

1. BANKRUPTCY (§ 151*)—RIGHTS VESTING IN TRUSTEE—LOCAL LAW.

A trustee in bankruptcy takes the property of the bankrupt subject to all the rights, claims, and equities that have been impressed upon it in the hands of the bankrupt, and the validity of such rights, claims, and equities is to be determined, in the absence of federal statute, by the local law.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 151.*]

2. BANKRUPTCY (§ 184*)—RIGHTS VESTING IN TRUSTEE—UNRECORDED CHATTEL MORTGAGE—LAW OF MISSOURI.

Under the law of Missouri an unrecorded chattel mortgage is void as against all creditors who intervene with process prior to recording or possession taken by the mortgagee; but such recording or possession validates it as to creditors who became such prior to its execution, and who have not so intervened; but as to creditors who extended credit between the time of the giving of the mortgage and its recording or the taking of possession it is absolutely void, and an equity in their favor superior to that of the mortgagee is impressed on the property which follows it into the hands of the mortgagor's trustee in bankruptcy, and may be enforced by him.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*]

3. BANKRUPTCY (§ 303*)—CHATTEL MORTGAGE—IDENTIFICATION OF PROPERTY.

A bankrupt in Missouri some six months before his bankruptcy gave a chattel mortgage on his stock in trade and fixtures. Held, that it was incumbent on the mortgagee to show what part of the mortgaged property remained and came into the hands of the trustee, for which purpose he might supplement the mortgage by parol evidence, and that as to such property as could not be so identified he stood on an equality with general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

In the matter of Guy L. Wade, bankrupt. On review of order of referee respecting claim of Dr. Edwin F. James. Modified.

John S. Farrington and Sam M. Wear, for intervening creditors. Thomas J. Delaney, for mortgagee.

VAN VALKENBURGH, District Judge. This comes upon the petition of Dr. Edwin F. James, a creditor of the above-named bankrupt, for a review of the order of the referee disallowing the claim of said creditor as a preference, and postponing its payment to the claims of the general creditors. The facts in the case are thus stated by the referee in his certificate:

On February 1, 1909, Dr. Edwin F. James sold to his cousin, Guy L. Wade, of Marshfield, Mo., for $2,000, a certain stock of drugs, medicines, etc., located

in the town of Marshfield, Mo. At the time of the sale, Mr. Wade paid $500, and gave his note for $1,500, dated February 1, 1909. The entire stock of goods and fixtures sold inventoried at that time $2,000.

On September 30, 1909, Mr. Wade executed a chattel mortgage to Dr. James on the stock of goods and fixtures, securing this $1,500 note which he had given February 1, 1909. The description of the property in the mortgage was as follows: "All the stock of drugs, patent medicines, toilet articles, paints, perfumes, drug sundries, musical instruments, sundries, and all the stock *now kept for* sale in the drug store in the town of Marshfield, Mo., known as the W. H. James & Son Drug Store. Also all fixtures in said store consisting of soda fountain, cash registers, show cases, scales, tables and chairs, etc."

On the 9th day of March, 1910, Dr. James filed this mortgage in the office of the recorder of deeds for Webster county, Mo.

On July 20, 1910, Dr. James took possession of this Marshfield drug store, having previously advertised it for sale under his mortgage, to be sold Saturday, July 23, 1910.

On July 21st certain of the creditors of Guy L. Wade filed an involuntary petition in bankruptcy, asking that he be adjudicated bankrupt, and at the same time filed a petition for a receiver and a petition for a temporary injunction, praying that the sale of the goods under the mortgage, which was alleged to be fraudulent and void, be stayed. The judge being absent from this division of the district, the matter was referred to the undersigned referee, and a temporary injunction was granted until an adjudication in bankruptcy or dismissal of creditors' petition.

On the 8th day of August, 1910, Guy L. Wade was adjudicated bankrupt.

On the 18th day of August, 1910, Dr. E. F. James filed his note and chattel mortgage together with a petition asking for a preference by virtue of said mortgage in the sum of $1,661.17. Exceptions to the allowance of same as a preference were filed by certain creditors who claimed a superior lien to that of the mortgagee, on account of their goods having been sold between the time the mortgage was given and filed. By agreement of all parties testimony was taken and the matter continued until after the first meeting of creditors (which was set for August 23d) for argument.

The first meeting of creditors was held August 23, 1910. Creditors in person and by attorneys appeared and proved general claims to the amount of $2,240.24; 33 claims being filed.

A careful examination of the 33 claims filed shows that of above amount there was sold: From September 30, 1909, to March 9, 1910, between the giving and filing of the mortgage, as follows:

| | | |
|---|---:|---:|
| Meyer Bros. Drug Co., St. Louis, Mo. | $ 178 | 87 |
| Nowell Shapleigh Hdwe. Co., St. Louis, Mo. | 89 | 93 |
| J. S. Merrill Drug Co., St. Louis, Mo. | 201 | 63 |
| Waters-Pierce Oil Co., St. Louis, Mo. | 22 | 50 |
| The Liquid Carbonic Co., Chicago, Ill. | 48 | 55 |
| John L. Boland B. & L. Co., St. Louis, Mo. | 184 | 96 |
| Peter Hauptman Tob. Co., St. Louis, Mo. | 60 | 44 |
| Ozark Ice Cream Factory, Springfield, Mo. | 7 | 00 |
| G. D. Milligan Gro. Co., Springfield, Mo. | 22 | 52 |
| Hall Drug Co., Springfield, Mo. | 69 | 72 |
| Ohio Varnish Co., Cleveland, Ohio | 29 | 20 |
| Martin Bros. Piano Co., Springfield, Mo. | 16 | 20 |
| National Candy Co., St. Louis, Mo. | 27 | 21 |
| Nat'l. Cigar Stands Co., New York City | 44 | 31 |
| | $1,003 | 04 |

The 33 claims filed aggregating ........................... $2,240 24

Of this amount, $1,003.04, according to claims filed, was sold between September 30, 1909, and March 9, 1910, between the time the mortgage was given and filing of record. This $2,240.24 does not include the $1,661.19 claimed by Edwin F. James as a preference, nor does it include all the debts scheduled, but only the ones filed at this time, as bankrupt's list of creditors since filed show an indebtedness of $5,374.92, of which amount $3,313.74 is

for merchandise and money borrowed; the balance being due Edwin F. James on his chattel mortgage and for rent of building.

At the time of sale to Wade. February 1, 1909, the testimony shows the goods and fixtures inventoried $2,000; goods, $1,416; fixtures, balance.

Guy L. Wade was adjudicated bankrupt August 8, 1910. The goods and fixtures were inventoried and appraised by three disinterested appraisers August 31, 1910, as follows:

| | |
|---|---|
| Fixtures | $ 752 80 |
| Mds. | 2,600 62 |
| Accounts | 107 50 |
| Total | $3,460 92 |

The testimony shows that Mr. Wade was in possession of this stock of goods from February 1, 1909, until July 20, 1910, selling them at retail and accounting to no one for the proceeds; that Dr. James was the owner of the building in which the goods were located; that Wade was to pay a monthly rental of $25 per month; and that during the 18 months he occupied same he paid the sum of $30 in all on the rent, and no amount whatever on his $1,500 note due Dr. James.

On August 25, 1910, the referee passed upon the preference claim of Dr. James, holding the chattel mortgage void as to all creditors except as to the fixtures, and that the creditors of the bankrupt who extended credit to the bankrupt after the execution of the mortgage and before it was recorded have a clear equitable right superior to that of the mortgagee.

On September 1, 1910, a petition for review was filed asking that the matter be certified to the judge of the District Court for review, and that the sale be stayed until a hearing of same in the District Court, which said petition was granted.

It will be observed that the referee does not find that actual fraud existed on the part of the bankrupt or Dr. James in the giving of this mortgage or in the neglect to record it until the 9th day of March, 1910. It is also conceded that the fixtures now in the store are practically the same as were in existence on the date the mortgage was made, to wit, September 30, 1909. The main questions involved are whether the chattel mortgage is a valid and subsisting one, and, if so, to what extent and upon what property; whether it can be enforced against the creditors of the bankrupt, and what is the power of the trustee in the premises.

Section 2861, Revised Statutes Missouri 1909, provides:

"No mortgage or deed of trust of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged or trust property be delivered to and retained by the mortgagee or trustee or cestui que trust, or unless the mortgage or deed of trust be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides, etc."

The only persons interested in the present controversy in antagonism to this mortgage are the general creditors of the bankrupt. In what manner, and at what stage, may they challenge a chattel mortgage thus withheld from the record, and to what extent may their rights, if any, be asserted by the trustee?

It has been held generally that a trustee in bankruptcy gets no better title than that which the bankrupt had, and is not a subsequent purchaser in good faith within the meaning of recording statutes. Neither does he stand ex officio in the position of a creditor armed with process. Hewit v. Berlin Machine Works, 194 U. S. 296, 24

Sup. Ct. 690, 48 L. Ed. 986; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 19 L. Ed. 577.

In York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, it was said:

"Under the provisions of the bankrupt act the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. The seizure by the court of bankruptcy did not operate as an attachment nor as a lien upon the property. The trustee under such circumstances stands simply in the shoes of the bankrupt, and as between them he has no greater right than the bankrupt. In other words, where no rights of creditors have attached, under the local law the trustee in bankruptcy takes no higher title than the bankrupt had."

In Re Garcewich, 115 Fed. 87–89, 53 C. C. A. 510, 512, the rule is thus stated:

"Under the present bankrupt act, as under previous bankrupt acts, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act."

In First National Bank v. Staake, 202 U. S. 141–149, 26 Sup. Ct. 580, 50 L. Ed. 967, the Supreme Court approves the following language of the Circuit Court of Appeals for the Fourth Circuit:

"The rule that the trustee takes the estate of the bankrupt in the same plight as the bankrupt held it is not applicable to liens which, although valid as to the bankrupt, are invalid as to creditors."

Whether, and to what extent, a mortgage of this kind is valid is a local question, and the decisions of the state court will be followed by this court in such case. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 308, 45 L. Ed. 457; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577. In short, it seems to be the settled rule that the trustee in bankruptcy takes the property of the bankrupt, subject to all the rights, claims, and equities that have been impressed upon it in the hands of the bankrupt, and that the validity of such rights, claims, and equities is to be determined, in the absence of federal statute, by the local law as evidenced by the decisions of the state courts. Cases above cited, and Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845; Bryant, Trustee, v. Swofford Bros. Dry Goods Company, 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; In re Dunlop, 156 Fed. 545, 86 C. C. A. 435; In re Great Western Manufacturing Company, 152 Fed. 123, 81 C. C. A. 341. It is conceded that the law of Missouri governs as to the respective rights of creditors and mortgagees at the time the trustee's title accrued.

In Missouri an unrecorded chattel mortgage is void as against creditors, both prior and subsequent, who intervene with process prior to recording or possession taken by the mortgagee. Collins v. Wilhoit, 108 Mo. 451, 18 S. W. 839. But failure to record may be cured as to prior creditors—that is to say, those existing at the time the mortgage was given—if the mortgagee take the property into his possession before such creditors have thus intervened, and, in that case, no lien in

favor of such creditors is impressed upon the property in the hands of the trustee. Harrison & Calhoun v. South Carthage Mining Co., 95 Mo. App. 80, 68 S. W. 963; Barton v. Sitlington, 128 Mo. 165, 30 S. W. 514; Landis v. McDonald, 88 Mo. App. 335; Dobyns v. Meyer, 95 Mo. 132, 8 S. W. 251, 6 Am. St. Rep. 32; Williams v. Kirk, 68 Mo. App. 457–461. But not so in the case of subsequent creditors; that is to say, those whose rights have intervened between the giving of the mortgage and its admission to record. As to such creditors the mortgage is absolutely void, and an equity in favor of such creditors is impressed upon the property which follows it into the hands of the trustee in bankruptcy. Harrison & Calhoun v. South Carthage Mining Co., 95 Mo. App. 80, 68 S. W. 963; State v. O'Neill, 151 Mo. 67, 52 S. W. 240; Barton v. Sitlington, 128 Mo. 165, 30 S. W. 514; Landis v. McDonald, 88 Mo. App. 335; Williams v. Kirk, 68 Mo. 457–461. This most clearly appears from the language of these cases.

"A chattel mortgage withheld from the record until a subsequent creditor extended credit to the mortgagor is void as to such creditor; and such creditor need not affirmatively show that he was deceived by the withholding of the mortgage from the record, nor that it was withheld by fraudulent intent or by agreement. The nonrecording is sufficient. We have no doubt that under our statute any creditors have a right to avoid an unrecorded mortgage, who have, during its absence from record, done anything material, which they may be fairly considered to have done on the basis of its nonexistence. A creditor extending credit during the period the mortgage was withheld is as much harmed by the good-natured, well-intended indolence and carelessness of the mortgagee as he would be by a fraudulent agreement not to record it. A person is presumed to intend the natural consequence of his act." Harrison & Calhoun v. South Carthage Mining Co., 95 Mo. App. 80, 68 S. W. 963, citing State v. O'Neill, 151 Mo. 67, 52 S. W. 240.

"But no one can complain of a failure to file a chattel mortgage for any length of time, unless after its date, and before its filing, or before the mortgagee takes possession under it, the creditor assailing it has dealt with the mortgagor as he would not have dealt had the mortgage been recorded." Barton v. Sitlington, 128 Mo. 165, 30 S. W. 516, citing Jones on Chattel Mortgages (3d Ed.) § 337a.

In Landis v. McDonald, 88 Mo. 335, it is held that the statute making unrecorded mortgages, where possession is not taken of the mortgaged property, invalid against any other person than the parties thereto, protects creditors both prior and subsequent; but the recording of the mortgage or the possession of the mortgaged property taken before the prior creditor obtains a lien will defeat him, yet such action cannot defeat a subsequent creditor. The fact that the general creditor may, subsequently to the origin of his debt, receive notice of a secret mortgage, will not destroy his right which accrued prior to the notice. The creditor does not have to show that he was injured by the concealment of the mortgage; the statute assumes injury and deception and itself avoids the mortgage. The mortgagor need not have a fraudulent intent, as the statute requires no such condition. Taking possession after fraud is committed will not nullify it. In case of prior creditors, if the mortgage be recorded, or the mortgagee takes possession of the property before such creditor obtains a lien thereon or changes position in relation thereto, it validates the mortgage as to him. But in case of subsequent creditors the mortgage is not validated by such registration or possession. So that the statute exactly meets

and fully protects one who extended credit to a mortgagor in possession of the property and the mortgage not recorded.

The court further says:

"We are of opinion that the statute applies to and protects a general creditor, or, as he is sometimes called, a creditor at large. While it is necessary that the creditor must be prepared to lay hold of the property in specie (such, for instance, as by attachment, or execution under a judgment), when he comes to enforce his right, yet that right may accrue to him as a mere general creditor. The statute does not make it a condition to its protection that the creditor must be a specific creditor with process for seizure of the property in his hands. The fact that the creditor cannot assail the mortgage until he has seized the property is of no moment in determining whether he belongs to the class of persons as to whom the mortgage is void. The statute itself avoids the mortgage. It is of no avail to defendant that he took possession of the goods. The fraud had already been committed and the injury done."

In Williams v. Kirk, 68 Mo. App. 457–461, the court said:

"Where the fraudulent character of a chattel mortgage is such that it may be cured by possession being taken by the mortgagee, and such mortgagee takes possession before the rights of third parties attach, the mortgage will be valid, notwithstanding that it may have been invalid up to the time of taking possession. But this case presents a different consideration. It is placed without the class of cases referred to by the fact that here the rights of third parties have intervened, though they had not attached to the property in specie. Between the giving and recording of the mortgage the indebtedness had accrued and the rights had thus intervened. The mortgage was therefore absolutely void and not merely avoidable. In the case at bar, as we have attempted to show, plaintiff's superior equity arose after the mortgage was made and before possession was taken."

The foregoing citations and quotations sufficiently make clear the law as declared by the Missouri courts. The identical matters here under discussion have been discussed by the Court of Appeals for this circuit in the case In re Bothe, 173 Fed. 597, 97 C. C. A. 547. The opinion was written by Adams, Circuit Judge, himself a Missouri lawyer and familiar, through long practice, with the spirit of the Missouri decisions. He says:

"The trustee in bankruptcy stands for and represents all persons interested in the estate of the bankrupt. In this case, doubtless moved so to do by the interested creditors, he seeks to assert an equitable right in favor of certain special creditors to a part of the bankrupt's estate as against the holder of a chattel mortgage purporting to convey it to one creditor. The rights of these special creditors rest on the principle of estoppel, and are no less enforceable in the bankruptcy court than they would be if they had their origin in written contract. Equitable rights, no less than legal, are there enforced. Atchinson, Topeka & S. F. Ry. Co. v. Hurley, 153 Fed. 503, 82 C. C. A. 453; s. c. 213 U. S. 126 [29 Sup. Ct. 466, 53 L. Ed. 729]. The mortgagee, Bothe, by leaving the property in the possession of the bankrupt and withholding the mortgage from the record, invited others to deal with the bankrupt on the assumption of his ownership of an unincumbered title to the property conveyed. Whether those so dealing with him were actually deceived or not is immaterial. The inevitable tendency was to mislead and deceive, and the presumption must be indulged that they were misled to their injury. (Citing Landis v. McDonald; Harrison & Calhoun v. South Carthage Mining Company, supra.)

"As between the mortgagee and those dealing with and extending credit to the mortgagor subsequent to the date of the mortgage and prior to the recording of it, there is an obvious equity in favor of the latter. * * *

"Counsel for the mortgagee claim that, because the special creditors in this case failed to take steps to fix a lien upon the mortgaged property before the mortgage was recorded, their rights were lost. We cannot give our assent to

this claim. Until the mortgage was recorded it was absolutely void as to these special creditors. Their superior rights arose against the property of their debtor while the mortgage was thus void, and to hold that such rights were lost before they had an opportunity to assert them, before they even knew of the existence of the mortgage, is a palpable absurdity. We find nothing in the cases referred to to justify any such contention. The words 'prior creditors,' there referred to, clearly relate to creditors whose claims antedated the execution of the mortgage. This is apparent not only from the opinions taken as a whole, but from other cases there cited and relied on. Such creditors, who parted with nothing on the faith of their debtor's ostensible ownership of unincumbered property, are required to take some step to fix a lien upon the mortgaged property prior to the recording of the mortgage in order to secure an equitable standing. Until then they have no equitable right or claim enforceable in a court of equity. On the contrary, creditors who extend credit to the mortgagor after the execution of the mortgage and before it is recorded have, as already seen, a clear equitable right, inhering in the transaction itself, superior to the mortgagee, and this right entitles them to relief without the necessity of fixing a lien as a prerequisite."

His conclusion is that:

"A trustee in bankruptcy represents all persons interested in the estate, and may enforce in the court of bankruptcy equitable rights existing in favor of certain of the creditors only."

That in Missouri:

"Creditors of a mortgagor who became such after the mortgage was given, but before it was recorded, have equities superior to those of the mortgagee, and the mortgage remains void as to them, although subsequently recorded, and although they have acquired no title to or lien upon the property."

The holding of the trial court that the proceeds of the property sold should be distributed ratably between the creditors whose claims accrued after the execution of the mortgage and before it was recorded, and that the claim of the mortgagee had the same equitable standing as the other claimants, and should participate ratably with them in the distribution of the proceeds of the property, is sustained.

In First Nat. Bank of Buchanan County v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148, the same court, speaking through Judge Hook, said:

"The Missouri statute provides that no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded in the county in which the mortgagor resides. The sweeping character of its provisions at once attracts attention. Under this statute it has been held that, where possession is not taken, an unrecorded chattel mortgage is fraudulent and void in law as to every one, excepting trespassers, parties to the instrument, and general creditors whose demands arose prior to the time it was given; nor as to such prior creditors is it valid if by proceedings in court or otherwise they have secured a lien upon the property before it is recorded. Such a mortgage is also utterly void as to simple contract creditors who extended credit after it was given and who have secured no title or lien by purchase, execution, attachment, or otherwise. As to them the subsequent recording of the instrument is of no effect. It cannot be asserted against the enforcement of their demands."

In McElvain v. Hardesty, 169 Fed. 31, 94 C. C. A. 399, the same court again speaking through Judge Adams said:

"Whether this agreement * * * be a chattel mortgage or a conditional sale, about which much argument was indulged, we deem it unnecessary to decide. It was clearly one or the other, and in either case the law of Mis-

souri made it invalid and void against creditors of the mortgagors or vendors, until recorded or filed in the recorder's office of the county in which the mortgagors or vendors resided. * * * This is particularly true as against subsequent creditors like those represented by the trustee in this case who incurred their debts on the faith of an apparent unincumbered and unconditional ownership by their debtors of their property"—citing a long array of Missouri cases.

In this case Judge Sanborn also sat and concurred in the opinion.

So that, in the three bankruptcy cases last cited, involving the same question here under discussion, we find all the present Circuit Judges of this judicial circuit approving the doctrine laid down by the Missouri courts as hereinabove stated. And the doctrine is reaffirmed by that court in the case of Samuel McAtee, Executor, v. William F. Shade, Trustee, 185 Fed. 442, wherein this language is found:

"That the mortgage would be void as to those creditors, if any, who extended credit to the bankrupt after it was made and before it was recorded seems clear"—citing In re Bothe, 173 Fed. 597, 97 C. C. A. 547; Central Bank v. Doran, 109 Mo. 40. 18 S. W. 836.

In First Nat. Bank v. Connett, supra, Judge Hook, referring to Missouri Courts of Appeals decisions therein discussed, said:

"It is true that many of these decisions are by intermediate courts of appeal and not by the highest judicial tribunal in the state; they are, however, persuasive in their exposition of the state law."

Respecting the claim that the subsequent creditors had actual notice of the existence of this mortgage, it is sufficient to say that this contention even if available, is not supported by the testimony. The witness McCormick states that he did occasional work for Bradstreet and Dun; that he made inquiry of the bankrupt as to the nature of this trade; and that the bankrupt said:

"Ed has a $1,500 mortgage on the stock of goods.

"Q. Did he say mortgage, or promise of a mortgage? A. He said mortgage.

"Q. Did you write that into your report? A. *I think so.*

"Q. Where did you send that? A. To the St. Louis office in their return envelope.

"Q. You haven't a copy of that report? A. No, I didn't keep a copy because I am not their agent. I do it gratis. I don't keep any records.

"Q. You made your report after this mortgage was filed? A. I don't know whether I did or not."

In addition to this testimony, counsel for claimant submitted a statement from R. G. Dun & Co. which is as follows:

Complying with your request we submit the following from our records as a statement furnished us by Guy L. Wade, Marshfield, Mo., under date of May 7, 1909.

Assets.

| | |
|---|---|
| Stock and fixtures | $3,800 00 |
| Good accounts and notes | 125 00 |
| Cash | 125 00 |
| Total | $4,050 00 |

Liabilities.

| | | |
|---|---|---|
| Mdse. not due | $ 250 00 | |
| Loans from friends | $2,500 00 | |
| | | $2,750 00 |
| Net | | $1,300 00 |

From all this, actual notice to the creditors cannot reasonably inferred.

From all the decisions, the former rule applicable to an assignee for the benefit of creditors under the state law does not apply because a trustee in bankruptcy takes the property subject to all equities that have been impressed thereon in the hands of the bankrupt. York Mfg. Co. v. Cassell, and In re Garcewich, supra.

It remains to consider whether the language of the mortgage described the goods sufficiently for identification and segregation. It is conceded that the description does not cover after-acquired property, and no claim is made to such by Dr. James. Goods were bought and sold in the course of trade until the intervention of the proceedings in bankruptcy, and it is now necessary to ascertain whether there are now on hand any of such as were in possession of the bankrupt and covered by the mortgage at the time it was given. The leading case on this subject is Stonebraker et al. v. Ford et al., 81 Mo. 532, which laid down the rule as follows:

"The mortgage to be effectual must point out the subject-matter of it so that a third person by its aid, together with the aid of such inquiries as the instrument itself suggests, may indentify the property conveyed." Hughes v. Menefee, 29 Mo. App. 205.

Parol evidence is admissible to aid the descriptive terms employed. Bank v. Shackelford, 67 Mo. App. 475–480. No great particularity is required; if, with the mortgage in hand, one upon inquiry can, from the mortgage, identify the property, the description is sufficient. Williamson v. Bank of Curryville, 69 Mo. App. 368. It is competent for the mortgagee, if he can, to show to the reasonable satisfaction of the referee what, if any, part of the goods on hand at the date of the mortgage came into the hands of the trustee. In re Doran, 154 Fed. 467–470, 83 C. C. A. 265. This is a question of fact, and if the description in the mortgage is so definite that by the aid of reasonable and natural inquiry the property covered by it, if any, which came into the hands of the trustee, can be ascertained, then the mortgage is not void for indefiniteness, and the mortgagee should be given the benefit of its provisions to such extent as he may otherwise be entitled. It is conceded that, even though the mortgage might be void as to the stock in trade, it would not be so as to the fixtures.

My conclusions are: (a) The mortgage of the claimant is wholly void as to creditors who became such between the giving of the mortgage and the date of its recording; (b) that as to creditors existing at the date the mortgage was given, and who had acquired no valid lien prior to the institution of the proceedings in bankruptcy, the mortgage is valid, in any event, as to the fixtures and as to so much of the stock of goods as can be proved to have been covered thereby, and to that extent the claim of Dr. James is superior to those of prior general creditors; (c) that, as to any part of James' claim not found to be covered by the mortgage as hereinabove defined, he has the same equitable standing as the other claimants not entitled to the superior equities defined under (a) and should participate ratably with them in the distribution of the proceeds of the property.

It is therefore adjudged and decreed that the order and finding of the referee certified for review be modified accordingly, and the case is remitted to the referee for further proceedings in accordance with this opinion and order.