THOMAS ROBERTS & COMPANY ET AL.

*vs.*

WILLIAM E. ROBINSON ET AL.

JAMES E. ELLEGOOD ET AL.

*vs.*

WILLIAM E. ROBINSON ET AL.

TERMINAL WAREHOUSE COMPANY

*vs.*

WILLIAM E. ROBINSON ET AL.

*Recording Statute—Reservation of Lien—Creditors Without Notice—Preference by Bankrupt—Replevin—Identification of Goods—Judgment on Appeal.*

A contract, under which a firm furnished cans and other supplies to a packer, by which the firm retained title to such supplies until payment of the purchase price, and by which the firm was also given a lien on the cans and their contents, when filled with produce obtained from other sources, as security for any balance due on their sales account or for advances of money, was within Code, art. 21, sec. 53A, requiring a sale or contract for the sale of goods, wherein the title or a lien thereon is reserved until payment of the whole or part of the price, to be recorded in order to be valid as against third persons without notice, if possession is to be delivered to the vendee. p. 43

Creditors trusting the vendee in ignorance of the vendor's secret reservation of interest in the property committed to the vendee's apparent ownership, are "third persons without notice" within the protection of Code, art. 21, sec. 53A, requiring the record of a contract of sale reserving title in the vendor as against such persons, if possession is delivered. p. 43

Judgment creditors holding executions returned unsatisfied
are entitled to challenge, as invalid under Code, art. 21, sec.
53A, a lien or title dependent upon an unrecorded agreement of
which they were unaware when their claims were contracted.

pp. 44, 45

Since the Bankruptcy Act, sec. 47a, vests the bankruptcy
trustees with all the rights, remedies, and powers of a judg-
ment creditor holding an execution returned unsatisfied, as
regards all property not in the custody of the bankruptcy court,
such trustees have the right to oppose an unrecorded reserva-
tion of title in a contract of sale of such property in behalf of
creditors without notice thereof.                              p. 44

Since a replevin suit against a bankrupt, which was insti-
tuted shortly before the filing of the petition in bankruptcy,
and under which possession of goods of the bankrupt was
obtained, would, if successful, secure a preference for the plain-
tiffs therein by the appropriation to their claim of a part of
the bankrupt's assets, such a suit is within the prohibition
against preferences, though it was authorized by an existing
agreement, between the bankrupt and the plaintiff therein, that
the latter might take the former's goods by replevin if the
former should become embarrassed financially, and the bank-
ruptcy trustee could, in behalf of other creditors, defend against
such a suit instituted a few days before the filing of the peti-
tion in bankruptcy.                                         pp. 45-49

One claiming a lien on material belonging to a bankrupt,
under an unrecorded contract, is in the position of one claim-
ing under an unrecorded chattel mortgage or bill of sale, with-
in Code, art. 21, secs. 43, 50, requiring such a mortgage or
bill of sale to be recorded, in order to be effective as to third
persons, and the bankrupt trustee may, under the Bankruptcy
Act, sec. 60b, assert the invalidity of such contract as regards
creditors without notice, such section invalidating a preferen-
tial transfer by the bankrupt, if made within four months be-
fore the filing of the petition in bankruptcy, or if recorded in
that time, when required by law to be recorded.             p. 49

Though the bankruptcy trustee may, as against an unre-
corded transfer by the bankrupt, assert a claim to the property

in behalf of creditors without notice of the transfer, such transfer is effective in favor of the claimant thereunder, as against creditors who gave credit with notice thereof.

pp. 49, 52

In an action of replevin for certain cans, as having been sold by plaintiff to a packer of canned goods, *held* that the evidence of the identity of the cans replevied with those sold by plaintiff was sufficient as to part only thereof.                          p. 52

That cans furnished to a packer by plaintiff, under a contract reserving title in the latter, were mingled by the packer with cans obtained by him from other sources, did not entitle the plaintiff to the possession of such other cans, as against the rights of third persons.                          p. 53

Where, in replevin, the controlling facts are undisputed except as to a question which is concluded by the verdict, and the value of the property is shown by the record, and is separable into the amounts to which the various parties are entitled, the appellate court may, under Code, art. 5, secs. 15, 22a, enter judgments for such amounts, without a retrial.                          p. 54

*Decided March 23rd, 1922.*

Appeals from the Superior Court of Baltimore City (GORTER, J.).

Action of replevin by William E. Robinson and Alphonso P. Robinson, trading as W. E. Robinson & Company, against William R. Keel, Thomas Roberts & Company and the Terminal Warehouse Company of Baltimore. Said Keel having been adjudicated a bankrupt, James E. Ellegood and others, his trustees in bankruptcy, were made parties defendant. From a judgment in favor of the plaintiffs for the property replevied, one cent damages and costs, said Thomas Roberts & Company, said trustees, and the Terminal Warehouse Company, take separate appeals. Reversed.

The causes were argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Vernon Cook and George Ross Veazey,* for the appellants, Thomas Roberts & Company and the Terminal Warehouse Company.

*Samuel K. Dennis,* for the appellant trustees.

*Thomas H. Robinson* and *Edward M. Hammond,* for the appellees.

URNER, J., delivered the opinion of the Court.

In this action of replevin the plaintiffs are W. E. Robinson and Company, commission merchants of Belair, Maryland, and the defendants are William R. Keel, an operator of packing factories in Wicomico and Caroline Counties, for whom his trustees in bankruptcy were substituted; Thomas Roberts and Company, commission merchants, of Philadelphia, and the Terminal Warehouse Company of Baltimore, in whose warehouse the goods taken under the writ had been stored. The issue in the case is concerned with the right to the possession of three carloads of canned sweet potatoes and one carload of canned tomatoes which Keel shipped, on November 18th, 1919, from the points of production to himself as consignee at the Terminal Warehouse in Baltimore, and upon which he received the same day an advance of $7,600 from Roberts and Company, to whom the bills of lading were duly transferred with a view to the sale of the goods by them on commission. The value of the canned goods, as appraised at the time of their seizure under the writ of replevin, was $11,491.15. Under an agreement with Keel the plaintiffs had furnished him cans and money, for the purposes of his packing business, on account of which he owed them a balance of more than $50,000. After receiving the advance from Roberts and Company, on the bills of lading endorsed to their order, Keel absconded. The pending suit was brought on

December 5th, 1919, and three days later proceedings in bankruptcy against Keel were instituted.

The claim of the plaintiffs to the possession of the goods in litigation is based upon a written agreement between themselves and Keel, dated February 1st, 1919, by which they contracted to sell him all the cans he required for the 1919 packing season, at prices prevailing at time of shipment, as ordered, the title to all cans and supplies shipped by the plaintiffs to remain in them until the purchase price was paid.   It was provided in the agreement that, if Keel should suspend business or become embarrassed financially, any account or note which the plaintiffs held against him should become immediately due and payable, and they should then be entitled to have delivered to them "all supplies and cans, filled or unfilled remaining on hand," and in the event of a replevin suit therefor, no previous demand would be requisite, the intention being expressed that, in any of the events mentioned, the plaintiffs should "have the exclusive right to the possession of said goods."   It was further stipulated that the plaintiffs were "to have the sale" of all goods packed under the contract, on a five per cent. commission, and should "guarantee payment of same when goods have been accepted by buyers and apply the proceeds, or so much as may be necessary, to the payment of cans, boxes or other materials furnished," and to the repayment of any money advanced by or due the plaintiffs, for commissions or otherwise, under the terms of the agreement.   It is a conceded fact that the agreement was never recorded.

The suit is resisted by Roberts and Company on the ground that their advance of money to Keel was made without notice on their part of the contract on which the plaintiffs rely, and that it is ineffective as to third persons without notice in view of the provisions of the Act of 1916, ch. 355.   (Code, art. 21, sec. 53A.)   The defense of the Terminal Warehouse Company is that it was entitled to the possession of the goods replevied until its unpaid storage charges were satisfied.   On

behalf of the creditors of Keel the trustees in bankruptcy dispute the validity of the unrecorded contract upon which the suit is based, and contend that, even though the bankrupt may have been bound by its terms, they are authorized to contest it by virtue of the Amendment of 1910 to the Bankruptcy Act.

At the trial below the case was submitted to the jury under instructions requiring them to determine whether Roberts and Company had notice of the agreement referred to, whether the Terminal Warehouse Company had waived its lien for the unpaid storage charges, and whether the cans replevied with their contents were identified as having been furnished by the plaintiffs. The court refused a prayer of the trustees in bankruptcy requesting a directed verdict in their favor on the ground that as to them the contract on which the plaintiffs depend is void. The verdict and judgment were for the plaintiffs, and all of the defendants have appealed.

The primary question in the case is whether the plaintiffs were entitled to the possession of the property in dispute as against the rights of the creditors represented by the trustees in bankruptcy. There are creditors so represented whose claims accrued after the date of the contract between the plaintiffs and Keel, and while he was the ostensible owner of all the assets of the canning business in which he was engaged. The Maryland statute already cited provides:

> "Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed, and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to third persons without notice until such note, sale or contract be in writing, signed by the vendee, and be recorded in the clerk's office of Baltimore City, or the counties, as

> the case may be, where bills of sale are now recorded;
> and such recording shall be sufficient to give actual or
> constructive notice to third persons when a memoran-
> dum of the paper writing, setting forth the date there-
> of, the amount due thereon, when and how payable
> and a brief description of the goods and chattels there-
> in mentioned shall have been recorded, but it shall
> not be necessary that said paper writing be acknowl-
> edged or an affidavit made to the consideration there-
> in expressed as in the case of bills of sale."

The contract we are considering reserved title in the plain-
tiffs to the supplies furnished by them to Keel until the pay-
ment of the purchase price. It also secured to the plaintiffs
the right to sell "all goods packed" under the contract, and
to apply so much of the proceeds as might be needed to the
payment of the amount due them for cans and other supplies
and for any money advanced. There was the dual purpose,
as disclosed by the express terms of the agreement, to retain
title in the plaintiffs to the cans and material purchased from
them, and to give them a lien on the cans and their contents,
when filled with produce obtained from other sources, as
security for any balance due them on their sales account or
for advances of money. In regard to either of these purposes,
and to both combined, the agreement is within the effect of
the statute we have quoted. As between the immediate par-
ties the contract is valid, but "as to third persons without
notice" it is declared to be void until placed upon the public
records in the manner prescribed. The creditors who trusted
Keel, in ignorance of the plaintiffs' secret reservations of
interest in the property which they committed to his apparent
ownership, were undoubtedly included among the "third per-
sons without notice" for whose protection the act was passed.
If it had been intended to protect only purchasers and lienors,
that purpose would have been expressed. The general terms
employed indicate that the statute was designed to safeguard
the interests of all persons, acting without notice of the un-

recorded contract, who would be injuriously affected if it were permitted to be enforced.

Formerly trustees in bankruptcy occupied the position of the bankrupt in regard to such rights as those asserted by the plaintiffs in this case, and hence were not entitled to contest the validity of secret reservations of title or liens which the bankrupt himself could not dispute. But, by the amendment of 1910 to the Bankruptcy Act, the trustees' rights in that respect have been enlarged. The amended act provides, by section 47A, that the "trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied * * *."

By virtue of that provision the defendant trustees, if the goods in suit had come into the custody of the bankruptcy court, would have had the right of a lien creditor to oppose the plaintiffs' unrecorded reservation of title. As the property is not in the custody of that court, the trustees' right to controvert the plaintiffs' claim is that which "a judgment creditor holding an execution duly returned unsatisfied" would possess. A judgment creditor in that situation would have the right to resist by suitable proceedings a void claim against the debtor's property by which the satisfaction of the judgment would be impeded. If such a right could not be exercised, the provision that unrecorded contracts reserving title or liens should be void as to third persons without notice would have no value whatever, so far as judgment creditors with executions returned unsatisfied are concerned. Even with respect to valid liens on the personal property of the debtor, a judgment creditor, who has issued a fruitless execution, has recognized privileges which may be exercised for his protection. *Shryock* v. *Morris*, 75 Md. 72; *Martin* v.

*Jewell,* 37 Md. 535; *Myers* v. *Amey,* 21 Md. 305; *Rose* v. *Bevan,* 10 Md. 470; *Harris* v. *Alcock,* 10 G. & J. 226. The right of such a creditor to defend his interests against a claim declared by law to be void is too clear for controversy. It is not necessary to determine generally in this case the rights and remedies of judgment creditors holding executions returned unsatisfied, but it is sufficient to state our conclusion that they are entitled, in view of our statute, to challenge a lien or title dependent upon an unrecorded agreement of which they were unaware when their claims were contracted.

As defendants in this suit, the trustees in bankruptcy are representing creditors who had no previous notice of the secret agreement under which the plaintiffs have taken possession of property of the bankrupt. The action to that end was begun by the plaintiffs within a few days before the petition in bankruptcy was filed, and when they knew that the debtor had absconded and was insolvent. By the contract they were permitted to take the goods by replevin if Keel should become "embarrassed financially." This suit was evidently brought in pursuance of that provision. The practical effect of the suit, if successful, would be to secure a preference for the plaintiffs by the appropriation to their claim of a part of the bankrupt's assets. Such a result, accomplished under the conditions we have described, would be contrary to the evident spirit and purpose of the Bankruptcy Act.

The fact that possession of the property was obtained by the plaintiffs before the filing of the petition in bankruptcy does not strengthen their position. They acquired possession with knowledge of the debtor's insolvency and within the period during which the creation of preferences is forbidden by the federal statute. The right of the other creditors, through the trustees in bankruptcy, to dispute the plaintiffs' claim of title, could not be thus defeated.

In *Bank of North America* v. *Penn Motor Car Co.,* 235 Pa. St. 194, the suit was in replevin to recover some motor cars which had been pledged to the plaintiff bank as security

for money loaned to the defendant corporation for the purchase of the cars from the manufacturers. Shortly after the writ of replevin was issued, bankruptcy proceedings were instituted against the defendant, and the motor cars were claimed by the trustee in bankruptcy, who intervened in the replevin suit for the purpose of asserting title and right of possession. The decision was in favor of the trustee. It was not disputed that the agreement pledging the cars to the bank, while the pledgor was left in possession and nothing was done to indicate a change of ownership, was invalid as to subsequent *bona fide* purchasers or levying creditors, although as against the pledgor it was effective, and the bank could have taken possession of the cars with or without the aid of a writ of replevin. But it was contended that a different rule should apply in view of the fact that the bank had secured possession of the cars by replevin before the institution of the bankruptcy proceedings. In disposing of this question the Supreme Court of Pennsylvania said: "Primarily, this is a controversy between the trustee in bankruptcy, representing the creditors of the bankrupt estate, and the bank claiming title to the automobiles as pledgee. The rights of creditors, the question of preferential liens, and the rules of procedure, under the bankruptcy laws, must necessarily prevail." It was found not to be essential to decide whether a transfer of property, or the creation of a lien, was involved, within the meaning of the provisions of the Bankruptcy Act prohibiting preferences by such means within four months prior to the filing of the bankruptcy petition. But the purpose of those provisions to secure equality in the distribution of bankrupt estates was held to "have an important bearing upon the effect to be given the amendment of 1910." After quoting that amendment, the court said: "The manifest purpose of the amendment was to enlarge the rights, remedies and powers of a trustee in bankruptcy, and it had the effect of vesting in the trustee the rights, remedies and powers of a judgment or other creditor having a lien, and of an un-

satisfied execution creditor without a lien at the time of insti-
tuting bankruptcy proceedings. In other words the trustee
was given the power to assert every right which such creditors
could have asserted during the period of four months imme-
diately preceding the filing of the petition in bankruptcy.
* * * As to the motor cars in dispute here, the rights of the
parties must be determined as they existed during the entire
four months period. * * * The purpose of the original bank-
ruptcy act, as well as the amendment of 1910, was to enforce
equality of distribution among all the creditors, to strike down
secret liens, and to avoid preferential transfers of property,
and as we read the decisions of the federal courts the con-
clusion is irresistible that they so understand and construe the
law. This general purpose of the acts would be defeated if
the contention of the appellant should be sustained in the
present case."

In *Stewart* v. *Asbury,* 199 Mo. App. 123, a trustee in
bankruptcy sued for the value of an automobile which the
defendant took from the bankrupt's possession and sold under
a claim of title reserved in an unrecorded contract of condi-
tional sale. The car was taken by the defendant while the
bankruptcy petition was being prepared. Under the Missouri
law it was required that instruments evidencing conditional
sales should be recorded in order to be valid as against cred-
itors. The judgment in favor of the trustee in bankruptcy
was sustained, and the opinion of the Court of Appeals stated
the following conclusions: "There is no question that the
federal Bankruptcy Act empowers a trustee to enforce the
rights of creditors of the bankrupt to set aside liens which
are void under the state law for want of recording or for other
reasons. *Studebaker Bros. Mfg. Co.* v. *Elsey-Hemphill Car-
riage Co.,* 152 Mo. App. 401, 133 S. W. 412; *In re Bothe,*
173 Fed. 597, 97 C. C. A. 547; *Landis* v. *McDonald,* 88 Mo.
App. 335; *Blake* v. *Meadows,* 225 Mo. 1, 123 S. W. 868, 30
L. R. A. (N. S.) 1. And the effect to be given to an unre-
corded chattel mortgage where the possession of the mort-

gaged article is not given to the mortgagee is to be determined
by the law of the state in which the case arises. *Corpus Juris,*
'*Bankruptcy,*' sec. 282 ; *Remington on Bankruptcy,* secs. 1140,
1141; *In re Wade* (D. C.), 185 Fed. 664; 26 *Am. Bankr.
Rep.* 169. * * * It has long been the law of this state that a
creditor who extends his credit to his debtor at a time when
there is a chattel mortgage or conditional contract creating a
secret lien on property in the hands of the debtor ostensibly
his cannot be defeated by the mortgagee or vendor taking
possession thereof under the mortgage or conditional contract,
or filing the same for record." (Citing a number of Missouri
decisions, and *In re Wade, supra; First Nat. Bank* v. *Con-
nett,* 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148;
*McElvain* v. *Hardesty,* 169 Fed. 31, 94 C. C. A. 399 ; and *In
re Bothe, supra.*) As the undisputed evidence in the case
showed that practically all of the creditors who were repre-
sented by the trustee extended credit to the bankrupt while
he was possessed of the automobile and while the contract
reserving title or a lien to the defendant was not recorded, it
was held that "such creditors cannot be defeated in their
claims against this property through their trustee by the
defendant creditor filing his mortgage and taking possession
of the car subsequent to the extension of credit by those whom
the trustee represents."

In *Fairbanks Steam Shovel Co.* v. *Wills,* 240 U. S. 642,
the holder of a mortgage, not recorded in the proper county
in Illinois, took possession of a dredge, under the lien of the
mortgage, after the filing of a petition in bankruptcy against
the mortgagor, but before adjudication and the appointment
of a trustee. The laws of Illinois provided that no chattel
mortgage should be valid as against the rights and interests
of any third person unless it was recorded or possession of the
property was delivered to the mortgagee. The Supreme Court
held that the mortgagee's title was not perfected by the act
of taking possession while the bankruptcy proceeding was
pending, even though there had been no adjudication and a

trustee had not been appointed, because the title of the trustee subsequently chosen related back to the filing of the petition, and since the amendment of 1910 trustees in bankruptcy "have the rights and remedies of a lien creditor or a judgment creditor as against an unrecorded transfer."

With respect to the *contents* of the cans replevied in the present case, the plaintiffs' claim is not of a title reserved under a conditional sale, but of a lien on material bought from others persons. To that extent the plaintiffs are in the same position in regard to the bankrupt estate as if they were claiming under an unrecorded chattel mortgage or bill of sale. By section 43 of article 21 of the Maryland Code, it is declared that no personal property, of which the vendor, mortgagor or donor remains in possession, shall pass to any purchaser, mortgagee or donee, except by bill of sale or mortgage duly acknowledged and recorded, but that this provision shall not be construed to invalidate such a transfer as between the parties; and by section 50 it is provided that mortgages of personal property "shall be valid and take effect, except as between the parties thereto, only from the time of recording." These provisions have been held to be intended for the protetion of purchasers, lienors and subsequent creditors without notice. *Textor* v. *Orr,* 86 Md. 392; *Brown* v. *Deford,* 83 Md. 297; *Pleasanton* v. *Johnson,* 91 Md. 673. The Bankruptcy Act, by section 60b, provides that if a bankrupt shall have "made a transfer of any of his property, and if at the time of the transfer, * * * or of the recording or registering of the transfer, if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy, or after the filing thereof and before the adjudication, the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby, * * * shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be avoidable by the trustee and he may recover the property or its value from such person."

If, in this case, the plaintiffs, a few days before the filing of the bankruptcy petition, had recorded the agreement under which they claim, it would have been voidable by the action of the trustees, under the provision last quoted, as involving a transfer of property under circumstances which characterize it as a preference. It would have been an attempted transfer of title to the plaintiffs, as to the goods which they had not furnished, and it could have been nullified by the trustees as the representatives of creditors for whose protection its registration was required. *Carey* v. *Donohue,* 240 U. S. 430; *Martin* v. *Commercial Nat. Bank,* 245 U. S. 513.

It was held in *Davis* v. *Harlow,* 130 Md. 165, that the trustee in bankruptcy was entitled to hold property of the bankrupt free of the lien of an unrecorded mortgage. There were creditors to whom the bankrupt became indebted after the mortgage was executed and who had no notice of its existence.

Until recorded, the agreement between the bankrupt and the plaintiffs was invalid, as to subsequent creditors without notice, in regard both to its conditional sale feature and to the lien which it sought to create. The action of the plaintiffs in securing possession of the bankrupt's property could not justly be held to have given them any advantage as against creditors who were prejudiced by the fact that the claim of lien and title now preferred had been previously undisclosed. Being invalid as against such creditors until recorded, the agreement is unavailable to the plaintiffs as the source of any right to appropriate assets which would otherwise form part of the bankrupt's estate.

The numerous cases cited by the plaintiffs have been examined, but in every instance there are decisive considerations arising from state laws and other conditions which are quite different from those here existing, and which render the rulings inapplicable to such a question as the one now presented. For example, in *Bailey* v. *Baker Ice Mach. Co.,* 239 U. S. 268, the unrecorded conditional sale contract there

considered was void in Kansas, where it was executed, only as against a creditor who, prior to the recording of the contract, "fastens a lien upon the property by execution, attachment or like process." So, in *Matter of Hamil,* 236 Fed. 292, the unrecorded contract with which the court was there dealing, and which was governed by the laws of New York, was not void as against creditors, but only as against "subsequent purchasers, pledgees, or mortgagees in good faith." In *Greey* v. *Dockendorff,* 231 U. S. 513, the contract antedated the amendment of 1910 to the Bankruptcy Act, and no reference was made in the opinion to that provision; and in *Greif Bros. Co.* v. *Mullinix,* 264 Fed. 391, the trustee had adopted and caused complete performance of the contract, which was afterwards questioned at the instance of a creditor whose claims originated before the contract was executed. None of the cases cited, or discovered in the course of our investigation, appear to be opposed in principle to the conclusion we have reached. In our opinion a different decision would fail to give effect to the plain intent of the Bankruptcy Act, when construed, as it was designed to be, in connection with the State recording laws, and when applied to the facts of the pending case.

The bankruptcy trustees, however, do not claim the whole, or a large proportion of the property replevied. The rights of Roberts and Company, who had made an advance of $7,600 and incurred freight, insurance and other costs aggregating $958.29, making a total of $8,558.29, as a present consideration, on account of the transfer of the goods to them for sale on commission, are obviously superior to the interests of the trustees, except as to the value of the goods in excess of that amount. This is the extent of the claim here asserted by the trustees. They have a larger claim in another case which this decision controls. After the property in this case had been replevied and delivered to the appellees, it was sold by them for the net sum of $9,004.39. Of the value thus determined the trustees would be entitled to $446.10, being the amount

remaining after the payments made by Roberts and Company, on account of these specific goods, have been deducted.

In reference to the property value to which the claim of Roberts and Company is directed, there are the independent issues between themselves and the appellees, which depend for their decision upon the existence or want of notice to the former of the unrecorded contract which the latter seek to enforce, and upon the question as to the legal sufficiency of the evidence to identify the cans, replevied with their contents, as having been furnished by the appellees under that agreement. Both issues were submitted to the jury and were decided in favor of the appellees. No point was raised, or could have been sustained, as to the legal sufficiency of the evidence to show that Roberts and Company had notice of the contractual rights of the appellees, but an instruction was unsuccessfully proposed to the effect that the evidence as to the identification of the cans was not legally sufficient.

The evidence shows that the appellees furnished Keel 46,132 cases of cans during the season of 1919, for his factories at Rockawalking, Quantico, and Federalsburg, the last shipment having been made on October 30th. All of the cans were manufactured by the American Can Company. From the last of October to the tenth of November, Keel bought 1,406 cases of precisely similar cans from other packers in Wicomico County, and had them delivered during that period to his factory at Rockawalking. The packers from whom these cans were obtained are creditors of the bankrupt estate and have testified that they had no notice of the contract on which the claim of the appellees is founded. The proof of identification offered in the case tended only to show that the replevied cans had been filled with produce in Keel's factories and were of American Can Company manufacture. If Keel had in fact received from the appellees all of the cans used in his business during the 1919 season, the sufficiency of the identification could not have been questioned. But as cans of the same kind were procured from two other sources, we

must learn from the evidence whether there is any possibility that they formed part of the property seized in this action.

It was proved that two of the four carloads of canned goods in question were shipped from Hebron, which is the regular shipping station for the Quantico plant. The cans delivered by the other packers at the Rockawalking factory cannot reasonably be supposed to have entered into the two shipments just mentioned. Of the two other carloads, which were sent from Rockawalking, one consisted of canned tomatoes. The testimony informs us that the season for packing tomatoes usually ends from the first to the tenth of October, if there are no early frosts. Since the cans obtained from other persons than the appellees were not received earlier than the last of October, the natural inference is that they were not used for the packing of the carload of tomatoes involved in this case. The other carload shipment from Rockawalking was of canned sweet potatoes. There is nothing in the evidence to exclude the theory that the cans in which these potatoes were packed may have been some of those which the appellees did not supply. As to that carload we think the proof of identification is not legally sufficient, but as to the other shipments the appellees fairly sustained the burden of proving that the cans included therein were part of those which they furnished. The goods were seized and scheduled in the separate carload lots in which they had been consigned.

The fact that the cans obtained by Keel from the various sources were mingled in the course of their use in his packing business might have prevented *him* from raising the question now under consideration, but it does not, as against the rights of third persons, entitle the appellees to the possession of property which is not proved to be within the terms and description of the contract by which their claim is sought to be supported.

In view of the proof to which we have referred we cannot approve of the rejection of the prayer which disputed its legal sufficiency in regard to the identification of the goods replevied, which the appellees claimed in their entirety.

There is evidence legally sufficient to justify the inference that the lien of the Terminal Warehouse Company for storage was waived and the theory of its prayer to the contrary was properly rejected. Its claim is proved to have been since paid by Roberts and Company, and if they have a right to avail themselves of that claim by way of subrogation, it can be filed and adjudicated in the bankruptcy proceedings.

No reversible error appears to have occurred in the rulings on the admissibility of evidence.

The important question remains as to the proper judgment to be entered to give effect to our conclusions under the very unusual conditions which are presented. The jury found as a fact that Roberts and Company had notice, at the time of their payments, of the interests of the appellees in the property which both are now claiming. This determination places the rights of the appellees above those of Roberts and Company as to the replevied goods, except as to such part as the evidence has failed to identify as being subject to the lien and title which the contract held by the appellees reserved. The claim of Roberts and Company was not to the ownership of the goods but only to a lien for the amounts which they advanced. The trustees claim only the value of the goods in excess of the amount required to reimburse Roberts and Company. That excess, as already noted, amounts to $446.10. According to the appraisement and the testimony, the value of the carload of canned sweet potatoes, as to which the identification proof has been found insufficient, was about one-fourth of the total value of the four carloads of goods in dispute. As a measure of practical justice, Roberts and Company should be awarded one-fourth of the net value of $9,004.39 remaining after deduction of the amount which the trustees in bankruptcy are entitled to receive. That proportion of the balance thus ascertained is $2,139.57. The appellees should rightfully have the remainder, amounting to $6,418.72. As the controlling facts are undisputed, except as to the question of notice, which is concluded by the verdict

of the jury, and as the value of the property is shown by the
record and is separable into the amounts to which the various
parties are entitled, the following judgments may properly
be entered, and the expense and delay of a retrial be thus
obviated.   *Code,* art. 5, secs. 15 and 22a; *Balto. & Ohio R.
Co.* v. *Rueter,* 114 Md. 700; *Bucher* v. *Federal B. B. Club,*
130 Md. 644.

> *Judgment reversed, the costs, above and below,
> to be paid equally by the appellees and
> Roberts and Company, appellants, and
> judgments are entered in favor of the ap-
> pellees, W. E. Robinson and Company, for
> the goods replevied to the value of $6,418.-
> 72, and in favor of the appellants, Roberts
> and Company, against the appellees, for
> the value of the goods replevied to the
> amount of $2,139.57, and in favor of the
> appellant trustees in bankruptcy, against
> the appellees, for the value of the goods re-
> plevied to the amount of $446.10, the two
> judgments against the appellees to bear
> interest from the date of their rendition.*