ALBERT BAISCH, PLAINTIFF, v. PUBLISHERS' TYPO-
GRAPHIC SERVICE, INC., A CORPORATION OF THE
STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided November 1, 1961.

*Mr. Isadore B. Miller* for the receiver (*Messrs. Miller &
Platt,* attorneys).

*Mr. Henry J. Bendheim* for W. F. Hall Printing Co.
(*Mr. Robert Halpern,* of the New York Bar, of counsel).

GRIMSHAW, J. S. C. The facts in this case are not in dispute and are, briefly, as follows:

Claimant, W. F. Hall Printing Co. (hereafter called Hall), entered into a contract with the defendant, Publishers' Typographic Service, Inc. (hereafter called Publishers'), the latter agreeing to set type for books which Hall printed. As part of the contractual undertaking Hall requested that Publishers' keep its type intact for six months after the first publication of Hall's books. Publishers' objected to this request and the parties agreed on a compromise whereby Central Typesetting & Electrotyping Company (hereafter called Central), a subsidiary of Hall, agreed to supply 25 tons of metal to be used by Publishers' to set type for Hall. This agreement, dated June 19, 1958, also provided that all metal shipped to Publishers' by Central was to remain Central's property; that no title was to pass to Publishers'; that such metal should be used only to set type for Hall; and that Publishers' agreed to keep all metal which Central shipped to Publishers' separate and apart from Publishers' other property and to keep it segregated so that it could be identified as property belonging to Central.

After the contract was signed, Central shipped 49,713 pounds of metal to the defendant. Publishers', in spite of the clear wording of its agreement with Central, followed a policy of melting down and refining Hall's metals with metals belonging to Publishers' and others. This was not discovered by Hall or Central and there is no proof that they ever took any positive steps, prior to the institution of this action, to exact strict compliance by Publishers' of its contractual obligations.

On June 2, 1961 a statutory receiver for Publishers' was appointed. During the course of Publishers' dissolution the receiver returned 23,211 pounds of metal to Hall, thereby leaving a balance of 26,500 pounds, which is the subject matter of the case. The 26,500 pounds of metal have been sold by the receiver, upon the agreement of both the receiver and Hall, and the proceeds of that sale, viz., $3,975, are

being held by the receiver pending the determination by this court as to the validity and extent of Hall's claim.

The sole issue presented is whether Hall is entitled to the full proceeds of the receiver's sale even though Hall was unable to identify specifically its portion of the 26,500 pounds of metal.

It is an elementary proposition of law that " 'the receiver represents the court and acts for the interest of all concerned,' " and that " 'receivers are but arms of chancery appointed to preserve the property of corporate and similar entities for the benefit of all parties in interest.' " *Mortgage Security Corp. v. Townsend,* 108 *N. J. Eq.* 268 (*E. & A.* 1931).

Hall, in an attempt to establish its right to the $3,975, places great reliance upon two principles of law. The first is that "If a person having charge of the property of another so confounds it with his own that it cannot be distinguished, he must bear all the inconvenience of the confusion, and must separate his own property, or lose it, if the obligation of keeping an account rests upon him." *Crane v. Decamp,* 22 *N. J. Eq.* 614 (*E. & A.* 1872). The second proposition is that where one fraudulently, willfully or wrongfully intermingles his goods with those of another, the wrongdoer forfeits all his interests in the mixture to the other party.

The receiver concedes, as I think he must, that as between Publishers' and Hall, Hall's position is unassailable. He maintains, however, that since the receiver is a representative of all the creditors of the debtor, the rules of law relied upon by the plaintiff-creditor are inapplicable and the equities of all the parties must be considered. I am in substantial agreement with the receiver.

The only case which deals directly with the matter is *Thomas Roberts & Co. v. Robinson,* 141 *Md.* 37, 118 *A.* 198 (*Ct. App.* 1922). The plaintiff in *Robinson* was a supplier of cans who entered into a contract with the defendant, a packer of cans, the latter agreeing that title to all the cans supplied by the plaintiff would remain in the plaintiff until

the purchase price was paid. Defendant in the course of his business mingled cans purchased from the plaintiff with cans purchased from other companies and when the defendant was declared insolvent the plaintiff sought to replevy its cans. In holding that the plaintiff was not entitled to replevy the cans because it could not positively identify the cans supplied by it to the defendant, the court said, 118 *A.*, at *pages* 203-04:

"If * * * [the defendant] had in fact received from the * * * [plaintiff] all of the cans used in his business during the 1919 season, the sufficiency of the identification could not have been questioned; but, as cans of the same kind were procured from two other sources, we must learn from the evidence whether there is any possibility that they formed part of the property seized in this action. * * *

The fact that the cans obtained by * * * [the defendant] from the various sources were mingled in the course of their use in his packing business might have prevented *him* from raising the question now under consideration; *but it does not, as against the rights of third persons*, entitle the * * * [plaintiff] to the possession of property which is not proved to be within the terms and description of the contract by which their claim is sought to be supported." (Emphasis added)

See. also, *Virginia-Carolina Chemical Co. v. Rogers*, 172 *N. C.* 154, 90 *S. E.* 129 (*Sup. Ct.* 1916). In that case the court held that where a plaintiff creditor fails to identify, specifically, funds allegedly due him and allegedly appropriated to his use by being kept separate and distinct, he is not entitled to priority out of said fund, and the "doctrine as to the 'confusion of goods' cannot avail against other creditors."

I am of the opinion that Hall's failure to identify positively the metal sold by the receiver is fatal to Hall's claim.

Hall's claim to the entire proceeds of the sale of the 26,500 pounds of metal is denied, and the receiver's request that Hall be considered a general creditor as to this fund is hereby granted.

Judgment accordingly.